714 So.2d 356 (1998)
Stephan BITTERMAN, et al., Petitioners,
v.
Anette BITTERMAN, Respondent.
Stephan BITTERMAN, et al., Petitioners,
v.
Patrick H. WEIDENBENNER, Respondent.
Nos. 90074, 90075.
Supreme Court of Florida.
March 26, 1998.
Rehearing Denied July 17, 1998.
*357 John Beranek of Ausley & McMullen, Tallahassee, and Nancy Little Hoffmann, Fort Lauderdale, for Petitioners.
John R. Hargrove and W. Kent Brown, Fort Lauderdale, and Peter Matwiczyk and Benjamin P. Brown, of Henrich, Gordon, Hargrove, Weihe & James, P.A., Palm Beach; and Brian B. Joslyn and Ronald E. Crescenzo of Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, for Respondents.
*358 Robert W. Goldman, Naples, for The Real Property, Probate & Trust Law Section of The Florida Bar, Amicus Curiae.
HARDING, Justice.
We have for review Bitterman v. Bitterman, 685 So.2d 861 (Fla. 4th DCA 1996),[1] which expressly and directly conflicts with Williams College v. Bourne, 656 So.2d 622 (Fla. 5th DCA 1995) (Williams College II), and Williams College v. Bourne, 670 So.2d 1118 (Fla. 5th DCA 1996) (Williams College III.) We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
The conflict between Bitterman and the Williams College cases arises out of the application of section 733.617, Florida Statutes (1993), a section of the Probate Code, which was amended by the legislature in 1993. Prior to that time, the compensation for both personal representatives and attorneys for personal representatives was covered by section 733.617.[2] The 1993 amendment created a new section, after which the compensation for personal representatives was covered by section 733.617 and the compensation for attorneys of personal representatives was covered by newly created section 733.6171. In addition, section 733.6171(7) allowed an attorney to recover costs for the time expended by the attorney seeking reasonable compensation for his or her services on behalf of the personal representative (fees on fees).[3]
Chapter 93-257, section 18, of the 1993 Laws of Florida, the act which created the amendment, states: "[T]his act shall take effect October 1, 1993, and shall be applicable to all decedents, including settlors of revokable inter vivos trusts, dying on or after that date." Section 733.6171(8) further provides:
This section shall apply to estates in which an order of discharge has not been entered prior to its effective date but not to those estates in which attorney's fees have previously been determined by order of court after notice.
§ 733.6171(8), Fla. Stat. (1993).
The two district courts are in conflict as to the applicability of the 1993 changes to estates which were pending at the time of the change. The facts of Bitterman, as stated by the district court, are as follows:
Irving Bitterman died on July 21, 1991 leaving an estate in excess of one million dollars. Pursuant to the will, Howard Bitterman and Stephan Bitterman, the decedent's sons, were appointed co-personal representatives of the estate, and were initially jointly represented by John Severson, Esq. From the early stages, the administration of the estate was an embittered conflict among Annette Bitterman, the surviving spouse, Stephan Bitterman, and Howard Bitterman over the interpretation of certain provisions of the decedent's will. In addition, Stephan Bitterman either raised objections, or threatened to object, to items such as his mother's petition for family allowances, her continued use of an automobile titled in the decedent's name, her petition for homestead to obtain title to the home in which she was living, and her retention of certain personal property. Howard Bitterman did not have any objections to the above items and, in fact, thought that his brother was treating his mother unfairly.

*359 Due to the brothers' continued disagreements over the administration of the estate, Mr. Severson withdrew based on conflicts, and each hired separate counsel. Howard Bitterman retained Pat Weidenbenner ("Weidenbenner"); Stephan Bitterman retained appellee, Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell ("Boose, Casey").
A. FEES OF ADMINISTRATOR AD LITEM
In June 1992, the brothers were deadlocked with respect to the administration of the estate, and all parties agreed to the probate court's appointment of appellee, Peter Matwiczyk ("Matwiczyk"), an experienced board certified attorney, to serve as administrator ad litem. Matwiczyk retained his law firm, Mettler & Matwiczyk, to act as his counsel in the administration of the estate.
Following his appointment, Matwiczyk met with counsel for all parties to determine each party's respective position and whether settlement was possible. After that first meeting, Matwiczyk concluded that he "was in the middle of a hornet's nest." He therefore determined that the best way to proceed was by filing responsive pleadings to the petitions that had been filed, and scheduling hearings to force the parties to address the issues. Since settlement was clearly not an option, Matwiczyk began to take discovery to determine each party's position on the issues. The discovery process was difficult since there were six or seven different lawyers involved. The difficulty was compounded by Stephan Bitterman's failure to cooperate, which necessitated several motions to compel compliance with discovery requests.
Upon realizing "that even the smallest detail was worthy, in the parties' mind, of litigating over," Matwiczyk informed all counsel by letter of his intent to charge for his time as fiduciary, and for his counsel's time. Matwiczyk informed the parties of his intention to charge $225 per hour for his time as administrator ad litem, $175 per hour for attorney Jeffrey Rollins' time, and $200 per hour for attorney Terri Di Pasquale's time. The letter contained the following pertinent language:
If this proposal is not satisfactory to your client and to his brother, I would like each of you to let me know immediately so that I can withdraw as Administrator Ad Litem. I am not going to get myself into a position where I end up in a fee fight with Stephan and Howard over my time, my hourly rates or whether I will be compensated for any time I spend in getting Court approval for my fees.
No one objected to the terms as contained in the correspondence.
The record shows that the majority of Matwiczyk's time was spent responding to Stephan Bitterman's attempts to void certain provisions of the will and his endless discovery games as well as in defending himself against Stephan Bitterman's breach of fiduciary duty accusations. Matwiczyk set the case for trial, but on the eve of the trial (October 1992), all but one of the issues were settled; the final issue settled shortly thereafter. The settlement agreement provided, in pertinent part, as follows:
The parties agree that whatever remaining amounts are necessary to resolve and pay the requisite fee claims of each of these law firms against the Estate will be paid from funds which would otherwise be distributed to Stephan and that Stephan shall be personally liable for any remaining sum of money in excess of $143,000 necessary to resolve and pay the proper fee claims of each of these law firms against the Estate. Stephan also agrees that all expenses associated with any negotiation or litigation concerning the full proper amount of the aforementioned legal fees will be paid from funds otherwise distributable to him, in the Estate and that he shall be personally liable for these expenses.
After the settlement, Matwiczyk learned that Stephan Bitterman planned to challenge Matwiczyk's fees. In December 1992, Matwiczyk therefore petitioned the court for discharge of his duties as administrator *360 ad litem on the grounds that, although he had not completed his duties ordered by the court, his continued participation had been subject to the objections of the co-personal representatives. The court granted the motion, and reserved jurisdiction to determine fees at a later date.
At the fee hearing, both Matwiczyk's expert and Annette Bitterman's attorney testified that Matwiczyk's actions were not only reasonable in light of the dissension among the parties, but they were instrumental in moving the case toward settlement. The trial court concluded that Matwiczyk and his counsel expended a total of 190.70 hours, and that given the difficult circumstances presented by this case, the fee was reasonable and justified. The court found further, that Matwiczyk had spent a significant amount of time following his discharge in collecting his fee and that of his counsel.[Note 3]
[Note 3:] The record shows that Stephan Bitterman obtained an "eleventh hour" continuance of the first fee hearing and thereafter, in the two months that followed, filed approximately 35 pleadings which necessitated a response from Matwiczyk.
Accordingly, the court determined that, pursuant to section 733.6171, Florida Statutes (1993), said fees are compensable from the estate assets. The court awarded Matwiczyk and his firm $39,308.04 in fees and costs.
B. BOOSE, CASEY'S FEES
In the early stages of the estate administration, Stephan Bitterman hired Boose, Casey to research the effect of Article II of the decedent's will. He also requested that the firm provide research on the propriety of each of Annette Bitterman's petitions, and eventually directed the firm to prepare objections. At the outset, Stephan Bitterman agreed to an hourly rate of $175 for attorney Brian O'Connell's ("O'Connell") services, $65 per hour for paralegal services, $135 per hour for one associate's services, and $155 per hour for another associate's services. The written fee agreement provides that Stephan Bitterman shall not be personally responsible for attorneys' fees for the estate.
In addition to doing the legal research, Boose Casey also represented Stephan Bitterman in the parties' several unsuccessful attempts at settlement. The record shows that while Annette Bitterman and Howard Bitterman suggested that the parties attempt to resolve one issue at a time, Stephan Bitterman, contrary to the firm's advice, insisted on a "global" resolution of the issues and even became so bold as to insist, as a contingency to settlement, that his mother write him into her will so that he could have some control over the money she would take from Irving Bitterman's estate. According to O'Connell, the parties were close to settlement at several times, with each attempt being ultimately thwarted by Stephan Bitterman's interjection of additional demands. At one time or another, Stephan Bitterman even threatened to bring bar complaints against each of the attorneys involved. O'Connell eventually suggested that Stephan Bitterman retain separate counsel to represent him in his capacity as beneficiary, which he did.
Stephan Bitterman became intimately involved with every detail of Boose, Casey's actions on his behalf. In fact, he directed O'Connell to forward all correspondence and pleadings to him (Bitterman) for review. According to O'Connell, on a daily basis, there were telephone calls between his firm and Stephan Bitterman to the point that Stephan Bitterman became involved with every detail. A review of Boose, Casey's phone bill indicates over 350 telephone calls between the firm and Stephan Bitterman in New York. In fact, O'Connell pointed out that Stephan Bitterman often took the liberty of calling O'Connell at his home, in his car, and even when he was on vacation.
In the summer of 1992, after Stephan Bitterman was unable to obtain the result he desired through settlement, he directed the firm to research the possibility of voiding his mother's and his brother's shares under the will, and of voiding certain provisions of the will, including Article II. Although O'Connell did not believe that there was sufficient evidence to suggest that a *361 portion of the probated will was invalid, he nevertheless filed, at Stephan Bitterman's direction, a defense to the will construction petition stating that Article II was invalid. Although O'Connell had informed Stephan Bitterman in writing that he (O'Connell) thought the pleading would be unsuccessful, he stated that he did not think it was frivolous. In that same letter, O'Connell also informed Stephan Bitterman that "the evidence available is not actionable in terms of challenging the will or a portion of it, regardless of any statute of limitations." There was evidence in the record that at one point Stephan Bitterman acknowledged the provision was clear and unambiguous.
Boose, Casey's expert testified that a reasonable hourly rate for O'Connell would range from $175 to $225, and a reasonable hourly rate for his paralegal would range from $65 to $95 per hour. Accordingly, he opined that a reasonable fee for Boose, Casey's work in this case would exceed 76,000.
The court found Boose, Casey's fees to be reasonable and entered a final judgment awarding the firm $76,542 in attorney's fees, $6,865.81 in costs, and $20,000 for attorney's fees expended collecting their attorney's fees.
685 So.2d at 862-65 (footnotes 1 and 2 omitted).
The Fourth District Court of Appeals affirmed the probate court's judgment, which granted additional fees to Matwiczyk and Boose, Casey for their efforts in collecting their attorney's fees. Both the probate court and the district court supported the award of additional fees for three reasons. First, both courts relied on section 733.6171(7). The district court concluded that the administration of Bitterman's estate was covered by 733.6171 (the 1993 amendment) rather than 733.617. The district court reasoned that the proceeding in question commenced in the probate court in March 1993, was tried in August 1993, and was concluded in December 1993, and was therefore within the purview of section 733.6171(8). Second, both the probate court and the district court concluded that Boose, Casey was entitled to additional fees based on section 57.105, Florida Statutes (1993), which enables prevailing parties to collect attorney's fees from losing parties when a court finds that no justiciable issue was raised by the losing party.[4] Finally, both the probate court and the district court concluded that Matwiczyk and Boose, Casey were entitled to the additional fees based on In re Estate of DuVal, 174 So.2d 580 (Fla. 2d DCA 1965). The district court cited the following from DuVal to support its conclusion:
The principle is well established that persons who successfully maintain legal proceedings to require a recalcitrant legal representative to perform his duties in that behalf do thereby perform a valuable service to the estate, and that the reasonable expenses incurred, including attorney's fees in the premises, are payable by the estate.... [T]he extraordinary services of [the attorneys] in consequence of the nature of appellant's steps in resisting appellees' petition for compensation, affords a proper and adequate basis for the award of attorney's fees and court costs to appellees as provided by the [trial court's order].
Bitterman, 685 So.2d at 866 (emphasis omitted) (quoting In re Estate of DuVal, 174 So.2d 580, 587 (Fla. 2d DCA 1965)). The district court also awarded appellate attorney's fees to Matwiczyk and Boose, Casey, presumably for the same three reasons.
The Williams College cases stem out of the administration of the estate of Robert Rosenburg. *362 The facts, as described by the district court in Williams College III, are as follows:
This is the third appeal which involves the issue of attorney's fees of and for Sidney Ward, the original attorney for Bourne. Ward performed services as Bourne's attorney between the admission of Rosenburg's will to probate on June 9, 1988, and June 29, 1990, when Bourne petitioned for discharge and requested attorney's fees for Ward. Williams College, the residual beneficiary under the will, filed an objection to the petition and alleged that Ward's fee request of $125,175.54 was unreasonable. Before the date set for the attorney's fee hearing, Ward suffered a stroke.
A hearing was eventually held in May 1991, at which time the probate court concluded that Williams College had agreed to a valid and binding fee contract with Ward, and the school's objection to Ward's fees was overruled. Williams College appealed that order to this court. Appearances by Craig Ward and Ronald Roby were made on behalf of the appellee, Sidney Ward. No appearance was made on behalf of appellee Bourne. This court reversed the trial court's order. Williams College v. Bourne, 625 So.2d 913 (Fla. 5th DCA 1993) [Williams College I].
On October 1, 1993, prior to the release of the opinion in Williams College I, a new section added to the Probate Code took effect. Under section 733.6171, Florida Statutes (1993), compensation for attorneys of personal representatives was to be calculated by taking into account two components: (1) the hours worked by the attorney and (2) the value of the decedent's estate. It also provided that fees of the attorney for the personal representative for litigating his own compensation were chargeable against the estate. § 733.6171(7), Fla. Stat. (1993). The effect of these provisions was to undo the holding of In re Estate of Platt, 586 So.2d 328, 336 (Fla.1991).
In December, 1993, Ward filed a new petition for fees in which he calculated his award based on the new statute. Williams responded with a motion to determine the applicability of section 733.6171. At a hearing on this matter held in early January 1994, the lower court determined that the new statute was applicable to Ward's representation. After Ward amended his petition in late January to a final request of $187,931, a two-day hearing was held to determine the reasonableness of Ward's petition. Roby represented Ward's interests at the hearing and presented two expert witnesses who testified on Ward's behalf. Williams College argued to the trial court that the fees were unreasonable and that application of the new statute to calculate Ward's fees was unconstitutional. The court's final order, entered on March 23, 1994, granted Ward $116,676 in fees under the new statute. The court also found that absent the new statute, an appropriate fee would have been $63,624. Williams College again appealed. Again Roby appeared as counsel on appeal for Ward. No appearance was made on behalf of appellee Bourne. Again this court reversed. Williams College v. Bourne, 656 So.2d 622 (Fla. 5th DCA 1995) [Williams College II]. The panel held that a retrospective application of section 733.6171 which served to increase the estate's obligation for attorney's fees was an unconstitutional denial of due process, and the court remanded the case to award Ward attorney's fees of $63,624.
While Williams College II was on appeal, Ward moved, under authority of the new statute, to be awarded $15,927 in attorney's fees and costs for services rendered by Roby after the effective date of section 733.6171(7). The lower court issued an order on November 15, 1994, awarding attorney's fees of $12,560.50 for Roby's services since October 1, 1994. The court also awarded $2,877.50 for expert witness costs from the February 1-2, 1993 hearings, and $288.95 for deposition and photocopying costs. All of the awards were to be paid from the estate. Although the court's order did not expressly state the judge's reliance on section 733.6171(7), such reliance is implied. On appeal, Ward advances several arguments in support of the award of Roby's fees, but the application of section 733.617(7), Florida Statutes *363 (1993) is the only one that merits discussion.
670 So.2d at 1119-20 (footnotes omitted).
As it had done in Williams College II, the district court in Williams College III again refused to apply the 1993 changes to the estate at issue.
Bitterman can be distinguished from the Williams College cases based on the different dates of discharge in the two cases. It could be argued that based on the effective date language of section 733.6171(8), the 1993 changes should be applied to Bitterman because the order of discharge in that case was entered in December 1993, after the October 1, 1993, effective date of section 733.6171(8) ("This section shall apply to estates in which an order of discharge has not been entered prior to its effective date but not to those estates in which attorney's fees have previously been determined by order of court after notice"). This is in contrast to the Williams College cases, where the order of discharge was issued in May of 1991, prior to the 1993 effective date.
However, the two districts are still in conflict over the issue of the point in time when the substantive right to collect attorney's fees vests. The resolution of this conflict is determinative of this case.
We resolve this conflict in favor of the Williams College cases. We adopt the following reasoning of the Fifth District Court of Appeal:
The ability to collect attorney's fees from an opposing party, as well as the obligation to pay such fees, is substantive in nature. L. Ross, Inc. v. R.W. Roberts Constr. Co., 466 So.2d 1096, 1098 (Fla. 5th DCA 1985), approved, 481 So.2d 484 (Fla. 1986). Substantive rights cannot be adversely affected by the enactment of legislation once those rights have vested. Id. Nor may the legislature increase an existing obligation, burden or penalty as to a set of facts after those facts have occurred.
Essential to the resolution of this matter is a proper determination of the specific points in time at which the legal rights and obligations of the parties must be compared in order to determine if a party's substantive rights have been affected. In Young v. Altenhaus, 472 So.2d 1152 (Fla. 1985), the Florida Supreme Court was faced with the constitutionality of applying a then-new medical malpractice statute which awarded attorney's fees to the prevailing party where the effect of the statute was to change the parties' substantive obligations between the time their rights vested and the time the fee determination was made. Regarding when the parties' rights vested, the court held that the controlling moment was when the underlying cause of action accrued. Id. at 1154. Later, Judge Cowart, in L. Ross, explained this principle:
Substantive rights and obligations as to the receipt and payment of attorney's fees is somewhat particular because, whether those rights and obligations are viewed as a separate cause of action, or as costs taxed in another, underlying, cause of action, they are ordinarily merely incidental to the other, underlying, cause of action and, in a sense, the right to receive, as well as the reciprocal obligation to pay, attorney's fees, is merely ancillary to, and an incident of, the accrual of the underlying cause of action concerning which the right to recover attorney's fees is given. Therefore the right to recover attorney's fees ancillary to another particular underlying cause of action always accrues at the time the other, underlying, cause of action accrues. This means substantive rights and obligations as to attorney's fees in particular types of litigation vest and accrue as of the time the underlying cause of action accrues.

L. Ross, 466 So.2d at 1098. The relevant inquiry in the case before this court is, therefore, when the "cause of action" arose between the parties.
In Williams II, which concerned Ward's right to compensation for services rendered prior to the enactment of section 733.6171, Florida Statutes (1993), we considered whether the new statute could be used to compute fees. This court stated:
In the case before us, once the services by the attorney for the estate were rendered, *364 the estate became obligated to pay a reasonable attorney fee in the amount of $63,624.00 based on then applicable law. Under Ross, this obligation may not be increased by a subsequent legislative enactment.

Williams II, 656 So.2d at 623. This holding might suggest that, as all of Roby's services for which Ward seeks compensation were rendered subsequent to the effective date of the new statute, there is no retrospective increase of burdens. This would, however, not be consistent with Williams II. In Williams II, although the dispute was nominally between Ward and Williams College, it was, in fact, between Ward and the estate. As a beneficiary under the will, Williams College was merely given the opportunity to assert its own interests by defending the estate. Without expressly stating so, the Williams II panel utilized principles analogous to those found in Young and L. Ross to find that Ward had a cause of action against the estate for the value of his services from the moment he began to render them. It was at that moment when, although the ultimate fee amount would increase over the course of Ward's services, the estate's liability to compensate Ward was legally fixed, as was the legal formula by which the fees would be calculated. The subsequent enactment of a statute that provided for a new formula could not constitutionally be effective to enhance that liability.
Here, Ward is seeking fees for the litigation over the reasonableness of his fee request. The personal representative's attorney has the right to recover fees incurred in the representation of the estate from the moment such representation is commenced; however, under prior law, recovery did not include time spent on his own compensation. Under the new statute, the attorney can expect that if the request is opposed and a hearing required, the fees incurred in that proceeding will likewise be compensable. To the extent Ward did or did not possess the right to compensation calculated in a certain way and the right to charge his time to litigate his own compensation, these rights were inextricably bundled at the moment Ward began his representation of the estate. It was at that time that any right he had to receive his fees and any corresponding obligation of the estate to pay those fees was legally vested. The effective date of section 733.6171(7), Florida Statutes (1993), was October 1, 1993. Prior to that date, and certainly on the date Ward began his representation, Ward was not entitled to receive fees for time expended in determining the amount of his fee, as the court explained in Platt. Because the effect of applying section 733.6171(7) to compensate Roby for defending Ward's fee claim is to retrospectively enhance the obligations of the estate, and ultimately Williams College, to pay Ward's fees, we reverse the order awarding fees for Roby's services in litigating Ward's fee.
670 So.2d at 1120-21 (footnotes omitted).
By applying this principle to Bitterman, it becomes clear that Matwiczyk and Boose, Casey had the right to recover attorney's fees incurred in the representation of Irving Bitterman's estate from the moment this representation commenced. Thus, Matwiczyk and Boose, Casey's rights to receive fees, and any corresponding obligation of the estate to pay those fees, was legally vested at the moment Matwiczyk and Boose, Casey began their representation of the estatein 1992. The effective date of section 733.6171 was October 1, 1993. By applying section 733.6171 to compensate Matwiczyk and Boose, Casey, the probate court and district court retrospectively enhanced the obligation of Irving Bitterman's estate. Because this retrospective enhancement is improper, section 733.6171 cannot apply to Bitterman's estate. The 1993 changes can only be applied to cases for which the legal right to attorney's fees vests on or after October 1, 1993.
Based on this conclusion, it also becomes clear that fees recovered by Boose, Casey based on section 57.105 are not justified in this case. As this Court stated in Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 505 (Fla.1982), section 57.105 fees can only be awarded in cases where there is "a complete absence of a *365 justiciable issue of either law or fact raised by the losing party." Due to the uncertainty of the application of the 1993 changes, it cannot be said that the claims raised by Stephen Bitterman completely lacked any justiciable issue.
Nevertheless, we feel that Matwiczyk and Boose, Casey are entitled to the fees that the trial court and district court awarded in this case, based on the inequitable conduct doctrine. The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith. Attorney's fees based on a party's inequitable conduct have been recognized by other courts in this country. See Vaughan v. Atkinson, 369 U.S. 527, 530-31, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (awarding attorney's fees based on respondent's "recalcitrance" and "callous" attitude); Rolax v. Atlantic Coast Line R.R. Co., 186 F.2d 473, 481 (4th Cir.1951) (holding that attorney's fees were justified because "plaintiffs of small means have been subjected to discriminatory and oppressive conduct by a powerful labor organization"). We note that this doctrine is rarely applicable. It is reserved for those extreme cases where a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Foster v. Tourtellotte, 704 F.2d 1109, 1111 (9th Cir.1983) (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). "Bad faith may be found not only in the actions that led to the lawsuit, but also in the conduct of the litigation." Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1298 (9th Cir.1982) (quoting Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973)). This Court and other courts in this state have recognized that attorney's fees can be awarded in situations where one party has acted vexatiously or in bad faith. See Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1148 (Fla.1985) ("This state has recognized a limited exception to this general American Rule in situations involving inequitable conduct."); Hilton Oil Transport v. Oil Transport Co., 659 So.2d 1141, 1153 (Fla. 3d DCA 1995); In re Estate of DuVal, 174 So.2d 580, 587 (Fla. 2d DCA 1965). Based on the facts of the case, we find that Stephen Bitterman's conduct was the type of conduct for which the inequitable conduct doctrine was intended to apply. Therefore, we approve of the award of fees, both by the probate court and the district court, to Matwiczyk and Boose, Casey.
Accordingly, we approve the result of the district court's decision in Bitterman, although we disapprove of that court's reasoning to the extent that it is inconsistent with the Williams College cases and our reasoning here.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The district court's opinion addressed two separate appeals, Bitterman v. Bitterman and Bitterman v. Weidenbenner. We have consolidated the two review proceedings for disposition by one opinion.
[2] Section 733.617, Florida Statutes (1991), entitled "Compensation of personal representatives and professionals," states in relevant part:

(1) Personal representatives, attorneys, accountants, and appraisers and other agents employed by the personal representative shall be entitled to reasonable compensation. Reasonable compensation may include compensation for the services of the agents or employees of the person seeking compensation and may also include reimbursement of out-of-pocket costs.
[3] Section 733.6171(7), Florida Statutes (1993), provides:

Court proceedings to determine compensation, if required, are a part of the estate administration process, and the costs, including fees for the personal representative's attorney, shall be determined by the court and paid from the assets of the estate. The court shall direct from which part of the estate they shall be paid.
[4] Section 57.105, Florida Statutes (1993), states in relevant part:

(1) The court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party; provided, however, that the losing party's's attorney is not personally responsible if he has acted in good faith, based on the representations of his client. If the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the defense, the court shall also award prejudgment interest.