990 So.2d 1140 (2008)
Priscilla Backers BURGESS, etc., Appellant,
v.
PFIZER, INC., etc., et al., Appellees.
Nos. 3D07-455, 3D07-754.
District Court of Appeal of Florida, Third District.
September 3, 2008.
*1141 Peter Loblack, for appellant.
Fowler White Burnett and Christopher E. Knight, and Marc J. Schleier and Helaine S. Goodner, Miami; Carlton Fields, and Edward W. Gerecke, Tampa and Wendy Lumish and Alina Alonso, Miami; Skadden, Arps, Slate, Meagher & Flom and Barbara Wrubel and Mark S. Cheffo, New York, for appellees.
Before RAMIREZ and WELLS, JJ., and SCHWARTZ, Senior Judge.
WELLS, J.
Priscilla Backers Burgess, as personal representative of the Estate of Tyrone K. Backers (herein, "Burgess"), appeals from an order dismissing this action with prejudice and imposing fees and costs jointly and severally against her and her attorney as a sanction for her attorney's malfeasance and disobedience. Pfizer and the University of Miami, defendants below, cross-appeal denial of their motion seeking to exclude the testimony of Burgess' only medical expert. We affirm, in part, the fee and cost sanction but reverse the dismissal order. We also dismiss the cross-appeal as premature.
Backers sued Pfizer and the University of Miami claiming that he had developed fulminant liver failure requiring a transplant as a consequence of ingesting Lipitor while participating in a volunteer clinical study of that drug. Burgess, Backers' mother, was appointed personal representative of his estate and substituted as plaintiff after Backers' death. After four years of litigation, during which Burgess' counsel filed numerous complaints, some containing claims in direct contravention to standing court orders, some detailing matters as extraneous as the Holocaust, the trial court entered an agreed order directing Burgess to file her sixth amended complaint clarifying her remaining claims. The agreed order expressly barred Burgess from adding any new parties or claims. Pursuant to the order, Burgess was to file the sixth amended complaint on October 30, 2006, twenty days after the court denied Burgess' motion to amend to add a punitive damages claim.
On December 4, 2006, Pfizer filed a motion to dismiss the action based on Burgess' failure to file a sixth amended complaint in compliance with the agreed order. The next day, Burgess filed a sixth amended complaint. Two days later, a re-noticed case management conference ("CMC") took place. Burgess' lawyer, Peter Loblack, failed to appear. Therein, Pfizer made, and the court granted, an ore tenus motion[1] for an order to show cause within twenty days why the action should not be dismissed. Loblack was ordered to appear at a January 5, 2007, hearing on the order to show cause.
Prior to the show cause hearing, the University of Miami's counsel contacted Loblack and advised him that the sixth amended complaint contravened the agreed order by adding new claims. Burgess then served a corrected sixth amendedwhich would be the seventh amendedcomplaint which included most of, if not all of, the improper allegations previously brought to Loblack's attention. Following the show cause hearing, the trial court sanctioned Loblack by awarding fees and costs to Pfizer and the University of *1142 Miami and entered an order stating that if defendants' motion to strike the sixth amended complaint was granted, Burgess would be sanctioned by dismissal of the action with prejudice. The trial court thereafter granted the defendants' motions to strike the most recent complaint and in an order detailing Loblack's malfeasance and disobedience, dismissed the case with prejudice. Final judgment was entered in favor of Pfizer and the University of Miami in the amount of $20,519.00 for the fees and costs they had expended, this sum to be paid by both Burgess and her attorney "jointly and severally."
Florida Rule of Civil Procedure 1.420(b) provides in relevant part: "Any party may move for dismissal of an action... for failure of an adverse party to comply with these rules or any order of court." "Nonetheless, not every failure to comply with a court order or rule of civil procedure will justify dismissal." Town of Manalapan v. Florida Power & Light Co., 815 So.2d 670, 672 (Fla. 4th DCA 2002).
We agree with Burgess that the instant dismissal with prejudice sanctions her too severely for her attorney's actions. As observed in Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993), and many other cases as well, "a fine, public reprimand, or contempt order may often be the appropriate sanction to impose on an attorney in those situations where the attorney, and not the client, is responsible for the error."[2]See Hastings v. Estate of Hastings, 960 So.2d 798, 801 (Fla. 3d DCA 2007) ("While a trial court may, without doubt, dismiss an action as a sanction for violation of a court order, it should do so `only in extreme circumstances.'" (quoting Clay v. City of Margate, 546 So.2d 434, 435 (Fla. 4th DCA 1989))); Cruz v. Caribbean Spring Village, 944 So.2d 1161, 1162 (Fla. 3d DCA 2006) (affirming an order vacating and setting aside a final default judgment where record did not show that the client personally contributed to the delays that resulted in the default); King v. Macaleer, 774 So.2d 68, 68 (Fla. 2d DCA 2000) (holding that dismissal was too harsh a sanction in the absence of evidence that the client was personally involved); Walicki v. Waste Mgmt., Inc., 703 So.2d 1095, 1096 (Fla. 2d DCA 1997) (reversing and remanding the case "for an evidentiary hearing to determine whether dismissal was warranted based on considerations outlined in Kozel"); see also Ham v. Dunmire, 891 So.2d 492, 496 (Fla.2004) (instructing that "to ensure that a litigant is not unduly punished for failures of counsel, the trial court must consider whether dismissal with prejudice is warranted").
While the Supreme Court made clear in Dunmire, 891 So.2d at 497, that there may exist circumstances where "dismiss[al][of] a litigant's action based upon an attorney's neglect," would be proper, those circumstances are not present in the instant case. Here, defendants' counsel candidly admitted that the actions meriting sanction were those of Burgess' attorney and not Burgess herself. Defendants' counsel also conceded that, but for all of the hyperbole in Burgess' various complaints, Burgess had stated a cause of action sounding in negligence. Additionally, the prejudice suffered by Defendants was addressed in the monetary sanction imposed. Moreover, while we cannot fault the trial judge's characterization of counsel's conduct as "willful," our review of the record indicates that this willfulness was the result of at *1143 least a splash of lack of ability rather than a wholly purposeful intention to disregard the court's instructions.
Under the facts of this case, we conclude that while the trial court acted well within its authority in sanctioning counsel for the fees and costs incurred as a consequence of his dilatory and disobedient actions, the trial court acted too harshly in both imposing that sanction on Burgess and in dismissing the action with prejudice. See Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 500 (Fla. 4th DCA 2001) ("dismissal with prejudice was improper because the Plaintiffs either did state causes of action or could, with some amendment, state causes of action"); Cummings v. Warren Henry Motors, Inc., 648 So.2d 1230, 1232 (Fla. 4th DCA 1995) ("dismissal of the complaint as a sanction for violating the court's order to amend the complaint is additionally erroneous when the complaint filed states a cause of action"); see also Dunmire, 891 So.2d at 498 ("Although a trial court `unquestionably has power to discipline counsel' for violating court orders, an action should not be dismissed when the malfeasance can be adequately addressed through the imposition of a contempt citation or lesser degree of punishment directly on counsel."); American Exp. Co. v. Hickey, 869 So.2d 694, 695 (Fla. 5th DCA 2004) ("Our review of the record suggests that dismissal with prejudice was too severe a response to the transgressions of American Express's attorney. The trial court has many options available to it in fashioning an appropriate sanction, including imposing fines, awarding attorney's fees under section 57.105, Florida Statutes (2004), finding counsel in contempt, or referring the matter to the Florida Bar. While it is essential that attorneys adhere to filing deadlines and procedural requirements, sanctions other than dismissal are appropriate in those situations when the attorney, and not the client, is responsible for the error. For the foregoing reasons, the order of dismissal is reversed."); see generally Bitterman v. Bitterman, 714 So.2d 356, 365 (Fla.1998) ("The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith."); Finol v. Finol, 912 So.2d 627, 629 (Fla. 4th DCA 2005) ("A trial court has inherent authority to order an attorney to pay opposing counsel's fees if the attorney acts in bad faith.").
Accordingly, we affirm that part of the trial court's order imposing monetary sanctions on Burgess' counsel. However, we reverse that portion of the order imposing monetary sanctions on Burgess and dismissing the action with prejudice, and we remand this matter to permit Burgess one final chance to file an amended complaint to state a single cause of action against Pfizer and the University of Miami for negligence. We do so without prejudice to further motions for sanctions, dismissal or summary judgment if appropriate. We also dismiss the cross appeal as premature. Finally, we order Loblack to serve a copy of this opinion on Burgess and to provide the court below with proof of such service within twenty days of the date of this opinion.
SCHWARTZ, Senior Judge, concurs.
RAMIREZ, J., dissenting.
I disagree with the majority that the trial court "acted too harshly" in sanctioning counsel for both costs and fees and in dismissing the case. I begin with the standard of review, which the majority leaves out of its discussion. It is undisputed that the standard is abuse of discretion, which is essentially a "reasonableness" test. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). "Discretion... is abused when the judicial action is *1144 arbitrary, fanciful, or unreasonable," and "[i]f reasonable [people] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Id. See also N.S.H. v. Fla. Dep't of Children & Family Servs., 843 So.2d 898, 903 n. 5 (Fla.2003). Let us then examine how the trial court was arbitrary, fanciful, or unreasonable in dismissing this case after the plaintiff was given eight opportunities to file a complaint that could withstand a motion to dismiss and failed. Let us review how no reasonable judge would have dismissed this case after more than four years and after counsel was sanctioned for directly disobeying court orders, only to have counsel ignore the court another time. Let us see why the majority of our court is more reasonable than the trial judge in giving Burgess "one final chance to file an amended complaint to state a single cause of action ... for negligence."

I. Facts

The instant case was instituted as a wrongful death action brought by petitioner, as the personal representative of the Estate of Tyrone K. Backers, against the appellees, arising out of Mr. Backers' participation in a clinical trial involving Pfizer's cholesterol-lowering medicine, Lipitor. Mr. Backers filed his original complaint more than six years ago, on July 11, 2002. Upon his death, his mother, Priscilla Backers Burgess, became the plaintiff.
Initial and Amended Complaints: The plaintiff's initial complaint sought "protection from the predatory and unconscionable acts of the Defendants in unethically subjecting the Plaintiff to known unreasonable risks of injury to his health...." In paragraph 2, the plaintiffs stated that "[a]s a result of the atrocities performed in the name of science during the holocaust, and other happenings in the World War II[era] because of the overreaching of self serving motivations of researchers, at the expense and total detriment of research subjects, what is known as the Nuremberg Code evolved." The complaint then explains what the Nuremberg Code provided. But in paragraph 3 of the complaint, we learn that the scientific community did not embrace the Nuremberg Code. Instead, it developed the World Medical Association's Declaration of Helsinki. Despite this, in paragraph 4, we hear of the Tuskegee experiment, which ostensibly led to the codification of 45 C.F.R. § 46. The complaint alleges that the defendants forged Mr. Backers' signature and backdated his consents. Plaintiff accuses Pfizer and the University of Miami of clandestinely dosing Mr. Backers with a Rezulin/Lipitor "experimental drug cocktail" and failing to disclose known risks of participating in the study. The plaintiff asserted counts for negligence, vicarious liability, negligence per se, breach of fiduciary duty, intentional and negligent misrepresentation, and unjust enrichment.
On October 10, 2003, the trial court granted in part and denied in part the defendants' motion to dismiss. The trial court dismissed the negligence per se count, finding the federal regulation upon which the plaintiff relied did not create a private cause of action. In particular, the trial court granted the motion as to count III, with leave to amend only if there was some change in the law. Over the next several years, the plaintiff amended her complaint numerous times to add over a dozen defendants and various claims. The plaintiff subsequently voluntarily dismissed all defendants save for appellees. Count III was for negligence per se based on the defendants' violation of 45 C.F.R. § 46.
Second Amended Complaint: The plaintiff removed the negligence per se *1145 count from the second amended complaint, but still contained the references to the Holocaust, the Nuremberg, the World Medical Association's Declaration of Helsinki, the Tuskegee experiment, and 45 C.F.R. § 46. The defendants moved to strike this inflammatory language. At a hearing on March 31, 2004, the trial court requested that the plaintiff respond in writing and suggested that an amended complaint be filed, warning that if it contained these inflammatory statements, they would be stricken.
Third Amended Complaint: The plaintiff thereafter sought leave to file a third amended complaint to add the previously dismissed negligence per se/strict liability count, and claims for declaratory relief and punitive damages. The University of Miami opposed the amendment, arguing the proposed third amended complaint violated the court's prior order by improperly including the negligence per se/strict liability claim the court had previously dismissed. It also argued the complaint's claim for punitive damages violated the statutory requirement that a party seeking to add a claim for punitive damages establish a reasonable evidentiary basis. See § 768.72, Fla. Stat. (2005). The trial court denied leave to amend to add the negligence per se/strict liability count because there was no private right of action under 45 C.F.R. § 46. The trial court gave the plaintiff an opportunity to file a memorandum in support of the punitive damages claim. The proposed third amended complaint also liberally quoted from, and attached as exhibits, a number of highly confidential documents produced by Pfizer pursuant to the trial court's agreed protective order.
After plaintiff's counsel had forwarded a draft of the proposed third amended complaint to Pfizer, and prior to plaintiff's filing, Pfizer specifically advised plaintiff's counsel that the filing of these confidential documents, except under seal, would be a violation of the agreed protective order. Nevertheless, without notice to Pfizer, plaintiff's counsel simply disregarded the agreed protective order and filed the pleading with the proprietary information and exhibits, with no request that the clerk place the documents under seal. Pfizer filed an emergency motion to remove the references to the confidential documents, which the trial court granted with directions that the documents be sealed. At a hearing, the trial court reminded plaintiff's counsel that the only permissible basis for the amended complaint was to remove the inflammatory references in the second amended complaint.
The plaintiff moved for reconsideration, which was denied. On June 10, 2004, the trial court entered an order imposing sanctions of $900 on the plaintiff. When the plaintiff failed to pay the sanctions within the allotted thirty days, Pfizer was forced to file another motion for sanctions. It took the plaintiff five months to pay the monetary sanction.
Fourth Amended Complaint: Before the trial court had accepted the third amended complaint, the plaintiff sought leave to file a Fourth Amended Complaint, adding eighteen new defendants and including, once again, a count for negligence per se/strict liability, in deliberate violation of the court's previous orders. Pfizer and the University of Miami opposed plaintiff's motion to amend. The court ultimately accepted the fourth amended complaint, with the exception of the negligence per se/strict liability count, which it dismissed for the third time. The University of Miami moved to dismiss, and Pfizer moved for summary judgment.
Fifth Amended Complaint: In September 2005, more than three years after the case was first filed and after Pfizer had moved for summary judgment, Plaintiff *1146 filed a fifth amended complaint, naming fifteen defendants and adding new allegations and claims. Pfizer answered, and the University of Miami moved to dismiss. In February 2006, the plaintiff filed a notice stating the action was at issue and ready for trial. The defendants moved to strike the plaintiff's notice because, among other things, motions to dismiss remained pending. The plaintiff refused to withdraw her notice until two days before the defendants' motions were set to be heard. After a hearing in March 2006, the trial court removed the case from the July 2006 trial calendar. After numerous motions to dismiss, pleadings, and hearings, the plaintiff agreed to voluntarily dismiss all defendants except Pfizer and the University of Miami.
Punitive Damages Resurrected: On July 3, 2006, the plaintiff moved to amend her complaint to add a claim for punitive damages, again alleging the atrocities committed during the Holocaust, the Nuremberg Code, the World Medical Association's Declaration of Helsinki, the Tuskegee experiment, and 45 C.F.R. § 46. The trial court denied the motion to amend.
The Last Two Complaints: The defendants had reached an agreement with the plaintiff to withdraw their motion to dismiss in exchange for the plaintiff's voluntary dismissal of several claims and defendants. This agreement was approved by court order on September 22, 2006 ("September 22 order"). The order provided that if the motion to add punitive damages was denied, the plaintiff would have twenty days to file a sixth amended complaint to clarify her claims. However, the trial court prohibited her from adding any new parties or claims. Because the motion to amend was denied on October 10, 2006, the new complaint was due by October 30, 2006.
A case management conference had been scheduled by agreement for October 13, 2006. Mr. Loblack waited until the day before the hearing to inform Pfizer's counsel that he was unavailable. Mr. Loblack agreed to provide availability dates to reschedule the conference, but he failed to do so. On October 20, 2006, Pfizer's counsel contacted Mr. Loblack to reschedule the conference for November 1, 2006, and forwarded a proposed agreed scheduling order. Mr. Loblack never responded. On November 6, 2006, Pfizer re-noticed the conference for December 6, 2006. The date was cleared with Mr. Loblack's office.
The day before the case management conference, Mr. Loblack finally served the sixth amended complaint. Not only was the complaint untimely, it violated the terms of the September 22 order by adding new claims.
The next day, Mr. Loblack failed to appear at the case management conference. The trial court entered an order directing the plaintiff to "show cause within 20 days why this case should not be dismissed with prejudice," and set a hearing on the matter for January 5, 2007. Although the plaintiff received the order both by facsimile and mail, he failed to respond within twenty days as ordered. He did, however, on December 27, 2006, file a "corrected" sixth amended complaint, which still contained numerous references to federal regulations.
On the morning of January 5, 2007, before the hearing on the order to show cause, the plaintiff filed a "response" to defendants' memoranda in support of the dismissal motion. At the hearing, Mr. Loblack asserted his failure to attend the case management conference on December 6, 2006, was due to a calendaring error; his failure to timely file a sixth amended complaint by October 30, 2006, was due to "a heavy caseload and travel plans before *1147 Thanksgiving"; and his failure to respond to the show cause order was due to his inability to read part of the faxed copy of the order. Mr. Loblack could not explain why, upon receiving an illegible fax of the order (a copy of which he had also received by mail), he had not contacted defense counsel or the trial court.
During the show cause hearing, the defendants indicated that if the case was allowed to proceed, they would move to strike plaintiff's corrected sixth amended complaint because it added new claims, in violation of the September 22 order. At the close of the hearing, the trial court entered an order awarding costs and fees incurred by defendants from October 13, 2006, the original date for the case management conference, and providing that "[i]f the Court grants Defendants' motions to strike the corrected sixth amended complaint, the Court will order a sanction of dismissal with prejudice."
The Dismissal: Pfizer and the University of Miami had separately moved to strike or dismiss the Corrected Sixth Amended Complaint for improperly including both new and previously dismissed claims, in violation of the September 22 order. In addition, the plaintiff revised her wrongful death count to allege a breach of duty based on violations of the federal regulations relating to consent of human subjects in clinical studies, even though the plaintiff's earlier claims for negligence per se had been repeatedly dismissed because the relevant regulations did not provide a private cause of action.
On January 29, 2007, after the plaintiff had responded, the trial court conducted a hearing on the motions and subsequently entered an order dismissing the case with prejudice, followed by a final judgment for defendants. The ten-page order included detailed factual findings and concluded that Mr. Loblack's conduct revealed "a pattern of willful disregard for the authority of the Court and the orderly administration of justice, and confirm[ed] that his recent noncompliance with Court orders warrant[ed] the ultimate sanction of dismissal."
Monetary Sanction: Following entry of the trial court's order of January 5, 2007, awarding defendants fees and costs from October 13, 2006, to January 5, 2007, as a sanction for Mr. Loblack's willful failure to comply with court orders, Pfizer filed a motion detailing its fees and costs. The plaintiff responded and also moved for reconsideration of this sanction. The trial court entered a final judgment against the plaintiff and her counsel, awarding Pfizer $20,519 in fees and costs.

II. Analysis

A. Standard of Review
A trial court's decision to dismiss as a sanction is reviewed for abuse of discretion. See Mercer v. Raine, 443 So.2d 944, 945-46 (Fla.1983). An award of attorney's fees and costs is also reviewed for abuse of discretion. See DiStefano Constr., Inc. v. Fid. & Deposit Co. of Md., 597 So.2d 248, 250 (Fla.1992). Florida courts give trial court judges great latitude in determining whether parties comply with procedural rules, because they are in the best position to do so. See Farish v. Lum's, Inc., 267 So.2d 325, 327-28 (Fla.1972) (reasoning that the exercise of discretion by a trial judge who sees the parties first-hand and is more fully informed of the situation, is essential to the just and proper application of procedural rules). The majority makes no mention of the proper standard of review, nor the healthy amount of discretion trial judges are given in ensuring that parties comply with court procedures. In that context, the trial court was the rightful determiner of Mr. Loblack's many transgressions. We should not set a precedent *1148 which infringes upon the discretion of the trial courts to make such determinations and hence impede their ability to make sure that the parties follow the rules.
Furthermore, we have always recognized that trial courts are given great latitude for the management and control of their calendars. Birnholz v. Blake, 399 So.2d 375, 378 (Fla. 3d DCA 1981) (lamenting that, "[a]fter the considerable expenditure of time, effort, fees, and judicial labor, this case is back to Square One"). More so than in Birnholz, this case, after six years, eight complaints, a record on appeal filling twenty-one volumes and spanning over 3500 pages, is still not at issue.

B. Dismissal with Prejudice
Florida Rule of Civil Procedure 1.420(b) provides in relation to the instant case: "Any party may move for dismissal of an action ... for failure of an adverse party to comply with these rules or any order of court." In the interests of an efficient judicial system and in the interest of clients, it is essential that attorneys adhere to filing deadlines and other procedural requirements. See Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993). Dismissal of an action with prejudice may be an appropriate sanction for a party's disregard of or gross indifference to a court order, as evaluated under the six factors established by the Florida Supreme Court in Kozel: 1) whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for noncompliance; and 6) whether the delay created significant problems of judicial administration. Id.

1. Whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience.
A counsel's noncompliance is willful where he is apprised of the court's requirements but disregards the consequences of not complying with them. See Mercer, 443 So.2d at 946. Here, early in the litigation, Mr. Loblack was told that the plaintiff's negligence per se count based on federal regulations was dismissed because no private right of action was held to exist. He was invited to produce case law to the contrary. He never did, yet the last amended complaint (number eight), is replete with references to federal regulations. Mr. Loblack was also apprised of the twenty-day time limit within which to file the sixth amended complaint, under the agreed September 22 order. He filed the complaint thirty-six days after it was due. Furthermore, Mr. Loblack disregarded the order's scope of permitted amendment by adding claims to the sixth amended complaint which appeared nowhere in the fifth amended complaint. Mr. Loblack intransigently did not remove the superfluous claims from his corrected version of the sixth amended complaint. Clearly, Mr. Loblack's addition of multiple battery claims to the complaint violated the order. The majority concedes that Mr. Loblack's actions were "willful." Most egregiously, Mr. Loblack did not show up for a case management conference that had been rescheduled at his request. He has the temerity to ascribe this blatant transgression to a "calendaring error," even though the day before he was busy serving a new amended complaint. Not even a rule to show cause seemed to have any effect on his behavior, because he totally ignored its mandate: to respond within twenty days. To this he had the *1149 excuse that he could not read the faxed copy of the order.
Did the trial court angrily dismiss the case at this point? No, Mr. Loblack was given the opportunity to amend the complaint to conform with prior court orders before the hearing on the motion to strike. He did nothing.
The majority makes an abstract characterization of Mr. Loblack's willfulness as being "at least a splash of lack of ability." I cannot agree with that characterization. From the very first complaint, Mr. Loblack composed an articulate nineteen-page work product eloquently protesting against the predatory and unconscionable acts of the defendants. In fifty-one numbered paragraphs, he subdivided the complaint into headings for background, jurisdiction and venue, parties, general allegations, followed by seven separate counts. He explained how Mr. Backers, who was diabetic, was recruited to participate in a study sponsored by Pfizer without obtaining an adequate informed consent by explaining that the experimental drugs could cause liver toxicity. Mr. Loblack then attached six exhibits to his complaint.
Mr. Loblack has been a member of the Florida Bar for more than seventeen years. He has a professional association, two offices, one in Plantation and one in Miami. He operates two websites claiming to have been: an adjunct professor at Florida International University; a former law clerk for U.S. District Court Judge James Lawrence King; vice president and general counsel for North Shore Medical Center; and an associate at Mershon, Sawyer, Johnson, Dunwody and Cole, and Ruden, McClosky, Smith, Schuster and Russell, P.A. He claims to have obtained his J.D. degree from the University of California-Hastings College of Law in 1990, where he was a Note Editor for the Hastings International and Comparative Law Review, as well as claiming to have obtained an M.B.A. from Florida International University in 1987. In my view, the only area where Mr. Loblack lacked "ability" was in complying with the trial court's guidelines and direct orders.

2. Whether the attorney has been previously sanctioned.
Before the trial court dismissed the action, Mr. Loblack was twice sanctioned for noncompliance with court orders. On June 14, 2004, he was ordered to pay a $900 fine for intentionally disclosing confidential documents in violation of a protective order. The trial court also imposed cost and fees sanctions at the January 5, 2007 show cause hearing, based on Mr. Loblack's failures to attend the case management conference and timely file the sixth amended complaint. Mr. Loblack continued to defy the trial court despite these monetary sanctions.

3. Whether the client was personally involved in the act of disobedience.
The trial court found that there was no evidence that plaintiff herself was involved in her counsel's misconduct. However, the Florida Supreme Court has made it clear that litigant involvement does not preempt the other five Kozel factors. See Ham v. Dunmire, 891 So.2d 492 (Fla.2004). The Florida Supreme Court has recognized the existence of circumstances where it may be appropriate to dismiss a litigant's action based upon an attorney's neglect. See Beasley v. Girten, 61 So.2d 179, 181 (Fla. 1952). In Beasley, the Florida Supreme Court recognized that the interests of justice may support a dismissal with prejudice for "persistent refusal" to comply with court orders. Id. Lastly, plaintiff did not need a law degree to ensure that Mr. Loblack followed court deadlines on her behalf. A simple telephone call may have *1150 sufficed. Mr. Loblack was her agent. Plaintiff, as the principal, had some duty to make sure that she was being adequately represented.
It is difficult to believe that Ms. Burgess has been totally ignorant of Mr. Loblack's activities during the last six years. As personal representative of the Estate of Tyrone Backers, she was substituted as party-plaintiff on June 23, 2003. After the case was dismissed, she has allowed Mr. Loblack to pursue this appeal. Are we to believe that during all these years she never asked Mr. Loblack when the case may be resolved? Are we to assume that she is ignorant of the fact that Mr. Loblack has yet to file a complaint that will withstand a motion to dismiss?

4. Whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion.
This case been protracted for over six years, over which time Mr. Loblack added various dubious claims to the original complaint. The record on appeal fills twenty-one volumes and spans over 3500 pages. Mr. Backers allegedly was recruited by Pfizer in 1997. It is safe to estimate that Pfizer and the University of Miami each have expended over six figures in fees defending this action. And presently, the case is not even at issue. I believe this case has reached "a point in litigation when defendants are entitled to be relieved from the time, effort, energy, and expense of defending themselves against seemingly vexatious claims." See Kohn v. City of Miami Beach, 611 So.2d 538, 539 (Fla. 3d DCA 1992).

5. Whether the attorney offered reasonable justification for noncompliance.
The trial court found that Mr. Loblack had not offered a reasonable justification for his noncompliance. This finding is amply supported by the record. Mr. Loblack explained that his failure to attend the case management conference on December 6, 2006 was due to a calendaring error; his failure to timely file the sixth amended was due to his busy work schedule and holiday schedule; and his failure to respond to the show cause order was due to the illegibility of the faxed copy of the order. I have never heard of such excuses.

6. Whether the delay created significant problems of judicial administration.
The trial court found that Mr. Loblack's failure to honor notices and court orders "caused additional significant delay in this already substantially and unnecessarily prolonged litigation." Again, this finding is amply supported by the record. This Court has stated, "As an action progresses, the privilege of amendment progressively decreases to the point that the trial judge does not abuse his discretion...." Id. Dismissal with prejudice is not generally an abuse of discretion in relation to amended complaints after the third attempt. Id. Here, the trial court gave Mr. Loblack six chances to properly amend his complaint. Even after his sixth amended complaint was found to be violative of the September 22 order, he was given a chance to correct it, which he failed to do. The trial court's energy wrongfully had been diverted from pursuing its judicial duties into handling Mr. Loblack's misconduct.
The cases relied upon by the majority do not support a reversal in this case. Ironically, one of the judges in the majority recently dissented in a case reversing the trial court for dismissing an amended complaint which constituted the plaintiff's first *1151 attempt to amend his complaint. See Fernandez v. Barry Univ., Inc., 973 So.2d 1240, 1242-43 (Fla. 3d DCA 2008) (Schwartz, J. dissenting) ("Because (a) even considering the appellants' pro se status, ... the amended complaint does not come close to stating a viable claim,... and (b) the trial court's conclusion that `Plaintiff has not complied with the Court's instructions, cannot comply with the Court's instructions, and does not intend to comply with the Court's instructions," is well supported by the record, ... I believe that there was no abuse of discretion in dismissing without leave to amend further"). If Mr. Fernandez's first pro se unsuccessful effort to state a cause of action in that case established that he did not intend to comply with the court's instructions, how can we conclude that Mr. Loblack will comply after failing to do so in his eight complaints and six years of vexatious litigation? See also Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So.2d 1157, 1162 n. 4 (Fla. 3d DCA 2008) (Wells, J.) (recognizing that as an action progresses, the privilege to amend progressively decreases).
The majority relies on Cruz v. Caribbean Spring Village, 944 So.2d 1161 (Fla. 3d DCA 2006), for the proposition that the client was not involved in any way in disobeying the court's discovery orders. In that case, however, we affirmed an order vacating and setting aside a final default judgment. We thus found that the trial court had not abused its discretion. We are doing the contrary here. The majority also relies on King v. Macaleer, 774 So.2d 68 (Fla. 2d DCA 2000), where the appellate court reversed an order dismissing a lawsuit for failure to comply with discovery orders. In that case, the court explained that the "record reveals that much of the problem resulted from a disagreement between the parties' attorneys over the technical requirements necessary to comply with discovery requests, rather than simply a case of ignoring the requests." Id. at 68. Our case, on the other hand, is much more than a disagreement over technical requirements. Mr. Loblack directly disobeyed orders, failed to appear when required and was monetarily sanctioned in order to obtain compliance, all to no avail. Unlike Ms. King, the client, who was not involved personally in the act of disobedience or was even aware that her lawsuit was in danger of being dismissed, I cannot agree that Ms. Burgess here is guilt-free. Either the passage of time intimated that her case was in danger of being dismissed, or she was maintaining herself in deliberate ignorance.[3]
In conclusion, I do not agree that Mr. Loblack's conduct was "splash[ed] with lack of ability," as the majority states. I believe it was "a wholly purposeful intention to disregard the court's instructions." I also believe the trial court was not only eminently reasonable, it exhibited incredible patience with an attorney who was going simply to continue to flaunt direct court orders. I certainly cannot agree with the majority that the trial court abused its discretion under Canakaris, 382 *1152 So.2d at 1203. If reasonable people can differ as to the propriety of the action taken by the trial court, by definition there can be no abuse of discretion. Id.
I would therefore affirm the trial court's dismissal with prejudice.
NOTES
[1] The University of Miami subsequently joined in this request.
[2] Kozel, 629 So.2d at 818, lists six factors to assist in determining whether dismissal with prejudice is warranted as a sanction and notes that "[u]pon consideration of these factors, if a sanction less severe than dismissal with prejudice appears to be a viable alternative, the trial court should employ such an alternative."
[3] I agree wholeheartedly with the footnote in King stating:

Although not required, we would suggest that in situations such as this case, a trial judge might want to require the attendance of a party at a hearing so they can be made aware of the problem. This provides the client with the information they need to instruct their attorney to comply with the court's orders or the opportunity to seek alternate counsel to prevent their case from being dismissed. We believe that the failure of the client to take any action, after being placed on such notice, would personally involve the client in the act of disobedience.
Id. at 69 n. 1.