NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


PETIA B. TENEV, ESQ.,                    )
                                         )
            Appellant,                   )
                                         )
v.                                       )   Case No.  2D14-4566
                                         )
FREDERICK D. THURSTON, D.M.D.,           )
individually; THURSTON DENTAL            )
ASSOCIATES, P.A., a Florida              )
professional association; and            )
THURSTON AND ACOSTA DENTAL               )
ASSOCIATES, P.L., a Florida limited      )
liability company,                       )
                                         )
            Appellees.                   )
_____)

Opinion filed March 9, 2016.

Appeal from the Circuit Court for Polk
County; Keith Spoto and J. Dale Durrance,
Judges.

Petia B. Tenev, Esq., pro se.

Matthew Morrow, St. Petersburg, for
Appellant.

Hank B. Campbell and William T. McKinley
of Valenti Campbell Trohn Tamayo &
Aranda, P.A., Lakeland, for Appellees.


SLEET, Judge.

Petia B. Tenev challenges the trial court's final judgment granting sanctions against her in which the trial court directed Tenev to pay $68,385.83 in attorneys' fees and $5853.83 in costs to Frederick Thurston, D.M.D.; Thurston Dental Associates, P.A.; and Thurston and Acosta Dental Associates, P.L. (collectively Thurston), who were the plaintiffs below. Tenev represented the defendants below, Henry Acosta, D.M.D., and Acosta Dental Associates, P.L. (collectively Acosta). We reverse.

The underlying action involved the separation and winding up of a dental practice that had been owned by Thurston and Acosta. The proceedings were bifurcated with the issues of dissolution, wind up, and an accounting addressed first at a bench trial. The parties then prepared to address the issue of damages via a jury trial. On May 5, 2014, the parties selected a jury, including one alternate, and the jury was sworn in. Before adjourning for the day, the court[1] addressed the jurors specifically, stating:

> I want to remind you that during this overnight recess do not discuss this case among yourselves or with any other persons, and do not permit anyone to say anything to you in your presence about the case, do not read or listen to any reports about the case, and do not do any electronic research on the Internet or any other electronic devices concerning this case or the location of this case, and do not have any conversation whatsoever with the attorneys, the parties, or any of the witnesses who are listed to appear in this case.

---

[1]Trial was conducted before Judge Dale Durrance, and he entered the mistrial and issued the order imposing sanctions. However, Judge Keith Spoto conducted the hearing on and entered the order setting the amount of sanctions.

On the following morning, before the jurors entered the courtroom, the court convened to discuss the logistics of the trial with the parties and counsel. After about thirty minutes of discussion, as the trial court was about to bring the jurors back into the courtroom, Tenev informed the court that she wanted to strike a juror for cause because the juror was a Facebook friend of one of Dr. Acosta's employees. Initially, the court became upset and admonished Tenev for violating the aforementioned instruction to the jurors before adjourning the day before. Then the trial court asked Tenev how she came to learn this information, and a lengthy discussion ensued during which Tenev gave three different answers to the inquiry. None of Tenev's responses involved any contact with the juror.

After hearing Tenev's responses, the trial court first stated that it could strike the questionable juror and proceed to trial with the alternate juror. Both parties initially agreed, but Thurston then asked for the court to inquire of both Dr. Acosta's wife and the juror. The court granted the request and inquired of the juror, who admitted to being Facebook friends with Dr. Acosta's hygienist but stated that she was unaware that the hygienist worked part time for Acosta and that she did not know anything about the instant case. Further, the juror stated that she had not had any contact with any party or attorney involved in the case. Thereafter, the court sent the juror back to the jury room and inquired of Dr. Acosta's wife, Katherine Loh.

Loh testified that she found the jury list in Dr. Acosta's suit coat the evening before and decided to research the jurors on the Internet. She discovered that one of the jurors was Facebook friends with the hygienist. Thereafter, she sent a text to Tenev informing her of the relationship and asking her to strike the juror. Tenev

responded to Loh that morning via text and asked for the name of the juror. Loh provided the name to Tenev.

Rather than making a motion to strike the juror and proceed to trial with the alternate juror, Thurston moved for a mistrial and argued that there was no way he could receive a fair trial given that Tenev and Loh had attempted to make improper contact with a juror. Tenev argued that the court should excuse the juror and proceed with the alternate juror because there was no evidence of any improper contact between herself and any juror. The court found that Tenev had acted in bad faith, and it granted a mistrial. However, the court did not find that Tenev had made any contact with the juror or that trial could not proceed with the remaining panel of jurors. Thurston filed a motion for sanctions, alleging that Tenev's dishonesty and improper juror research caused the mistrial. Following a hearing, the trial court granted the motion and ordered Tenev to pay for Thurston's counsel's fees and costs for preparation and attendance at the trial and prosecution of their motion for sanctions.

On appeal, Tenev first argues that the trial court's imposition of sanctions must be reversed because the court failed to make specific findings as to the grounds for the sanctions. However, the trial court did make a specific finding that Tenev was dishonest in answering the court's inquiry about the basis for striking the juror and such does constitute an ethical violation between Tenev and the court. But the court failed to make specific findings as to any bad faith acts committed by Tenev that were so prejudicial as to vitiate the entire trial and necessitate a mistrial. Although counsel for Thurston's frustration with Tenev is palpable from the record, Thurston did not provide the trial court with a sufficient legal basis to grant the mistrial.

"We review an order imposing sanctions for abuse of discretion." Rush v. Burdge, 141 So. 3d 764, 766 (Fla. 2d DCA 2014). "[A] trial court possesses the inherent authority to impose attorneys' fees against an attorney for bad faith conduct." Moakley v. Smallwood, 826 So. 2d 221, 226 (Fla. 2002). However, that authority is not unfettered or without limits; the court must strike a balance "between condemning as unprofessional or unethical litigation tactics undertaken solely for bad faith purposes, while ensuring that attorneys will not be deterred from pursuing lawful claims, issues, or defenses on behalf of their clients or from their obligation as an advocate to zealously assert the clients' interests." Id. Accordingly

> the trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees. Thus, a finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings.

Id. at 227.

In the instant case, the trial court made the following findings in its written order:

> With regard to Plaintiffs' Motion for Sanctions against Defendants' counsel, Petia Tenev, Esquire, the court specifically finds that her bad faith conduct leading up to, during and even subsequent to the jury trial which began on May 5, 2014, and which mistried on May 6, 2014, reflects an intentional, consistent, deliberate, and contumacious disregard for [the trial] court's authority. In particular the conduct of Defendant's counsel pertaining to her May 6, 2014, request to disqualify a juror for cause after the jury was sworn on May 5, 2014, well establishes her unethical and willful disregard of or gross indifference to the authority of the court. As clearly reflected in the transcript, in the history of this case, and as asserted in Plaintiffs' Motion for Sanctions, Ms. Tenev's actions, including her admitted

dishonesty to the court's direct questioning, mandates sanctioning . . . .

The bulk of the trial court's findings lack the high degree of specificity required to support the imposition of sanctions. However, the court arguably makes a sufficiently detailed finding upon which to sanction Tenev for being dishonest before the court. But a review of the record before us clearly establishes that Tenev's dishonesty was not a litigation tactic undertaken solely for bad faith purposes. Tenev initially set out to notify the court of a potentially biased juror before trial commenced. Such was her duty as an officer of the court, and she clearly was not attempting to unduly delay or protract litigation or to seek an unfair advantage against Thurston. However, the aggressive inquiry by the trial court as to the legal basis for her motion to strike the juror was met with inarticulate, evasive, and dishonest answers. As a consequence, she violated her oath as an attorney to be honest before a tribunal. See R. Regulating Fla. Bar 4-3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal."); 4-8.4(c) ("A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.").

Nevertheless, we conclude that the dishonest answers Tenev gave to the trial court during the conference before the commencement of opening statements did not adversely impact the proceedings in any material way such that a fair trial could not be had for both parties. And Tenev's actions certainly did not result in Thurston incurring additional attorneys' fees and costs. When a trial court awards attorneys' fees as a sanction against an attorney, "the amount of the award of attorneys' fees must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney." Moakley, 826 So. 2d at 227.

- 6 -

The trial court determined that Tenev's actions caused the ultimate mistrial of the case and awarded "all reasonable attorneys' fees and costs incurred for preparation for and attendance at jury trial." This was an abuse of discretion because the only detailed factual finding of bad faith on the part of Tenev—the dishonest statements to the court—did not warrant a mistrial. "[A] mistrial should not be granted unless an absolute legal necessity to do so exists." Gatten v. Zachar, 932 So. 2d 543, 544 (Fla. 5th DCA 2006) (quoting Ratley v. Batchelor, 599 So. 2d 1298, 1302 (Fla. 1st DCA 1991)); White v. Consol. Freightways Corp. of Del., 766 So. 2d 1228, 1232 (Fla. 1st DCA 2000) (same); see also Duest v. State, 462 So. 2d 446, 448 (Fla. 1985) ("[A] mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial.").

Once Tenev brought the issue of a potentially biased juror to the trial court's attention, the court questioned both Loh and the juror, revealing no evidence of any improper contact with any of the jurors on the part of Tenev or Loh. Trial had not commenced, and an agreed upon alternate juror was available and could have been substituted for the questionable juror. The remaining jury panel, including the alternate, had been sequestered during the hearing on the request to strike, and there was no indication that Thurston could not have received a fair trial with the alternate juror seated. In moving for mistrial, counsel for Thurston argued that the jurors had been waiting three hours and were aware that one juror had been questioned by the court. But a jury having to wait while a trial court hears a motion is not so prejudicial to one party or the other so as to create an absolute legal necessity for a mistrial.

Furthermore, in granting the mistrial, the trial court made much of the fact that Tenev had disobeyed its instruction to do no research on the case. But the pretrial

instruction to refrain from discussions or research about the case and to avoid any contact with witnesses and parties was directed to the jurors—not the attorneys or the parties—and could not be a basis for the imposition of sanctions against Tenev. There is no prohibition in Florida law against an attorney researching jurors before, during, and throughout a trial so long as the research does not lead to contact with a juror. An attorney is not obligated to inform the court of such research unless it affects the fairness of the trial and the administration of justice.

In this case, the research was initiated by a party's spouse who was also a witness under subpoena to testify. When the result of the research was relayed to Tenev, she had an obligation to inform the court of a potentially biased juror who had a relationship with her client's employee, and she satisfied that obligation. Even had Tenev immediately stated that it was Loh who had made the Facebook discovery, the trial court still would have had to conduct a hearing and inquire of Loh and the potentially biased juror. And although the trial court also seemed to take exception to the fact that Tenev did not bring the issue to the trial court's attention until thirty minutes into the morning's proceedings, nothing about that time delay exacerbated the situation or changed the fact that the alternate juror could have been seated in place of the potentially biased juror.

Review of the record demonstrates that the trial court conducted numerous motion hearings, patiently dealt with Tenev's repetitive arguments, and expeditiously ruled on the legal issues. However, it appears that Tenev's motion to strike this juror on the morning of trial was the proverbial straw that broke the camel's back. The court's frustration is evident in its order granting sanctions; however, none of Tenev's actions warranted the granting of Thurston's motion for mistrial. Her dishonesty

about the juror research did not directly affect Thurston's incurrence of attorneys' fees and costs in preparation for and attendance at the jury trial.  And the fees and costs Thurston did incur in seeking sanctions were the result of its own motion.  At the hearing on the sanctions motion, Thurston presented no evidence or argument to establish that it had been prejudiced in any way by the three conflicting answers Tenev gave regarding the juror research.  As such, we must reverse the trial court's order in its entirety.

Reversed.

ALTENBERND and LUCAS, JJ., Concur.