NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BRUCE ROBINSON, MICHAEL FORTE,       )
ESQ., and JESSICA TETRICK, ESQ.,     )
                                     )
        Appellants,                  )
                                     )
v.                                   )        Case Nos.    2D14-4799
                                     )                     2D14-5359
JACQUELINE WARD, as parent and       )
natural guardian of L.W.,            )        CONSOLIDATED
                                     )
        Appellee.                    )
_____)

Opinion filed November 9, 2016.

Appeals from the Circuit Court for Polk
County; J. Dale Durrance, Judge.

Manuel J. Alvarez and Carla M. Sabbagh of
Rywant, Alvarez, Jones, Russo & Guyton,
P.A., Tampa, for Appellant Bruce Robinson.

Tracy Raffles Gunn of Gunn Appellate
Practice, P.A., Tampa, for Appellant
Michael Forte, Esq.

Hala A. Sandridge of Buchanan, Ingersoll &
Rooney, P.C., Tampa, for Appellant Jessica
Tetrick, Esq.

Joel D. Eaton of Podhurst Orseck, P.A.,
Miami; Law Offices of Allen & Abaray, P.A.,
Lakeland; and Brennan, Holden &
Kavouklis, P.A., Tampa, for Appellee.

KHOUZAM, Judge.

L.W. was injured in a car accident while a passenger in a pickup truck that collided with a van driven by Bruce Robinson, who was working for Talbot House Ministries at the time. L.W.'s mother, Jacqueline Ward, filed suit against Robinson and Talbot House but voluntarily dismissed the suit against Talbot House before proceeding to trial. Attorneys Michael Forte and Jessica Tetrick represented Robinson. Following trial, the jury found that both drivers were at fault and awarded L.W. damages for past medical expenses but not for future expenses. L.W. moved for a new trial or, alternatively, mistrial and sanctions, based on alleged misconduct by Attorneys Forte and Tetrick. Finding that such misconduct had indeed occurred and had interfered with the jury's ability to be fair, the circuit court granted a new trial and ordered sanctions against both defense attorneys.

In these two consolidated appeals, Robinson appeals the circuit court's order granting new trial and Attorneys Forte and Tetrick appeal the order imposing sanctions against them. Because we conclude that the record supports the circuit court's findings of misconduct by Attorney Forte and the resulting harm to the fairness of the trial, we affirm the order granting new trial based on that misconduct as well as the order imposing sanctions to the extent that it imposes sanctions on him. However, because the record before us does not support the court's findings of misconduct by Attorney Tetrick, we are constrained to reverse the order imposing sanctions to the extent that it imposes sanctions on her.

## I. **The Alleged Misconduct**

Though there were quite a few instances of alleged misconduct by Attorney Forte, we will focus our discussion on the several most egregious examples that, by themselves, support the court's rulings.

### a. *Talbot House Ministries*

Talbot House Ministries was originally named as a defendant in this case, but Ward voluntarily dismissed the case against it at the beginning of trial. Ward filed a motion in limine seeking exclusion of any mention of Talbot House. Ward's counsel believed that the fact that Robinson was running an errand for a religious charity at the time of the accident was irrelevant to the issues in the case and would unfairly create sympathy for him. Ward's counsel argued that the Ministries' logo should be redacted from any photos of the van admitted into evidence. The court agreed, ruling that Robinson was only permitted to say with whom he was employed, what he was doing, and that he was in the course and scope of his employment. The court stated that there was no relevance to anything else referencing the Ministries.

Despite this ruling, Attorney Forte asked prospective jurors whether they had heard of Talbot House Ministries, intentionally placed an unredacted photo of a Talbot House Ministries van on the overhead projector during Robinson's testimony, and unnecessarily inserted the words "Talbot House" into his questions for the driver of the pickup truck. At the close of all evidence, in the presence of the jury, Attorney Forte offered three photos of the van with the Ministries' logo visible in each. Though Ward's counsel did object to some of these actions, he did not object to all of them because he was concerned that objecting before the jury would create the appearance that he had

something to hide.  Similarly, the court determined that redacting the logo in the photos provided to the jury after Forte had already revealed the unredacted photo to them would be problematic.  The court stated that the motion in limine was moot at that point because Forte had "just kind of rolled over" it, exposing things that were in violation of the court's ruling.

### b.  *Florida Department of Children & Families' (DCF) Investigations*

Before calling Ward to the stand, her counsel moved in limine to prevent the defense from cross-examining her about DCF investigations and family members' arrest records.  Following a lengthy discussion, the court reserved ruling but instructed defense counsel not to question the witness on either matter without first proffering the questions and answers outside the jury's presence.  However, while cross-examining one of L.W.'s doctors, Forte displayed a page from the doctor's records (which were not in evidence) on the overhead projector.  The page indicated that "DCF has gotten involved."  Ward objected.  The trial court admonished Forte for exposing this information to the jury without a proffer, stating: "[Y]ou've done just what I told you not to do.  And I know how you've done it.  But if it doesn't come in through the front door, you can't get it through the back door or the side door or the window or underneath the roof either."  Following the proffer, the court granted the motion in limine, stating as follows:

> Okay.  I will grant the motion in limine.  There will be no mention or reference to DCF or any family members' arrest records, and it will all be struck from any documents that you have reference to it, and it will be redacted.  I find that it is not relevant, and it's not material.  I further find that it's highly prejudicial.
>
> In addition, I further find that, Mr. Forte, you violated the Court's instruction whenever you all gave preliminary arguments on the motion in limine, and I reserved ruling,

waiting until you got ready to bring it up, so it could be proffered. And the instruction was for you to let the Court know, I would take the jury out and allow you to proffer it, as you've just now proffered outside the presence of the jury.

I note that you have put two documents up before the jury, one that you just showed from April the 21st, indicating the mother is in jail with a highlight. And then the second document brought [plaintiff's counsel's] objection concerning DCF. That was improper. That was wrong for you to bring those up and show them before the jury in your cross-examination of this witness without letting the Court know, so that you could properly make a proffer.

So I just want the record to reflect that there are still some more pending motions in limine. The Court has reserved on them, waiting for a proffer. If there is a second violation of that, the Court will proceed to impose sanctions with or without any motions from opposing counsel.

Despite this ruling, approximately twenty minutes later Attorney Forte placed a document on the projector that suggested that J.W.'s father had been arrested. Ward's attorney objected. The court stated:

Well, I know, Mr. Forte, this has been a difficult day for you. This has been a difficult week. Any time a case gets pulled off track and lawyers don't stay focused on their case presenting testimony to the real issues, that makes your day go pretty bad in a hurry. And it's not much fun for the Court either, because then we have to deal with all of that. And I've been dealing with it each times it comes up.

I was surprised when I saw that come up on the monitor. I was surprised whenever they didn't jump up over there and object. I certainly wasn't going to jump up and object, but I noted it. And I thought, "Why is he putting that up there," whenever I've gone over this and ruled on this, because my ruling was, I granted their motion in limine, and it is to exclude any testimony, evidence, or mention concerning Department of Children & Families, and as well as criminal arrest records of family members.

And this is a criminal matter concerning one of the family members. It's not relevant. It's not material. Again, it

- 5 -

violates the Court's ruling. So, once again, I'm taking your motion for sanctions under advisement. I believe this is now at least the third motion for sanctions, at least two against Mr. Forte and one against Ms. Tetrick, that I've got under advisement. I'm going to address them at an appropriate time. But I'm going to try my best to keep this case on track to be sure that each party gets a fair trial. Because that's what I'm here to try to do.

Now, probably the safe thing for you, Mr. Forte, is if you have any doubt in your mind—because you've been flipping documents up there pretty regularly. You flip them and take them away, flip them, take them away, flip them, take them away. Now, I'm watching them, so I know what's going up there. I'm not sure—I don't know if counsel for the plaintiff has been able to keep up with all of them. But that's probably a dangerous thing for you to do. So if you got any doubts about something you're fixing to flip up there, then I would recommend that you probably ask for a bench conference and come up here and be sure that you're not going to do something else to violate this Court's order.

These statements show that, in the court's assessment, Attorney Forte was repeatedly and intentionally violating the court's rulings in an effort to draw focus from the "real issues" in the case and place the jury's focus instead on irrelevant and immaterial but highly prejudicial matters. The court expressed concern that Attorney Forte's behavior was jeopardizing the fairness of the trial.

c. *Facebook Posts*

While cross-examining Ward, Attorney Forte asked her whether she had posted the following on Facebook: "Now, I'm stuck here at the courthouse for a long week of trial. Girl, it's BS. And they expect it to last all week." Ward's counsel objected, stating that the post was from only two days previous, had not been disclosed to him, and that Forte had mischaracterized the statement. After discussion, the court ruled as follows:

> [T]he Court finds that the question was an improper cross-examination question. There hadn't been anything on direct examination along those lines. I further find that it was a violation of discovery. Whenever you know about it on Monday, and you waited now until Wednesday afternoon, still not ever disclosing it, just bringing it out and throwing it in front of the jury, that was not only a violation of discovery, I consider that to be attorney misconduct.

The question was stricken from the official record but preserved for appellate review, and a curative instruction was given. The court again reserved ruling on the motions for sanctions.

## II.     Order Granting New Trial

The circuit court found that a new trial was warranted because Forte's repeated "pushing of the envelope" throughout the trial was so harmful and highly prejudicial that it impaired the jury's ability to be fair. The court further determined that the damage caused by Forte's improper actions was incurable because the probability that those actions would result in an improper verdict could not be eliminated by sustaining a timely objection and providing a curative instruction. The court concluded that the misconduct "so damaged the fairness of the trial that the public's interest in our system of justice required a new trial." Considering the record before us, we cannot say that the court abused its discretion in making these findings.

This issue is governed by Murphy v. International Robotic Systems, Inc., 766 So. 2d 1010 (Fla. 2000), in which the Florida Supreme Court addressed the question of when a new trial may be granted based on improper but unobjected-to attorney conduct. In the context of improper arguments made during closing, the supreme court held that

before a complaining party may receive a new trial based on unobjected-to closing argument, the party must establish that the argument being challenged was improper, harmful, incurable, and so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial. Should the trial court find that these criteria have been established, the court must enter an order granting a new trial specifically identifying both the improper arguments of counsel and the actions of the jury resulting from those arguments.

Murphy, 766 So. 2d at 1031.

We review the trial court's decision for an abuse of discretion. Id. As the supreme court has explained, "Although we have not absolutely 'closed the door' on appellate review of unpreserved challenges to closing argument, we have come as close to doing so as we believe consistent with notions of due process which deserve public trust in the judicial system." Id. The use of an abuse of discretion standard in this scenario is "based on the presumption that the trial judge ruling on the motion for new trial was the one who presided over the case and is therefore in the best position to determine the propriety and potential impact of the conduct." Sullivan v. Kanarek, 79 So. 3d 900, 903 (Fla. 2d DCA 2012). A court's decision to grant a new trial is given even greater deference than a court's decision to deny a new trial. Id. at 905.

It is also important to keep in mind that where one party's counsel repeatedly refuses to comply with a court's ruling, the other party's counsel is put in a difficult situation. On one hand, an objection is necessary to preserve the error. But on the other hand, making numerous objections may alienate the jury.

Jurors cannot be expected to understand the basis of counsel's repeated objections. All that is apparent to jurors placed in this position is that frequent objections and sidebar conferences prolong their service, and perhaps limit the information available to the jury. Thus, counsel's repeated

- 8 -

objections to the same type of behavior may well lead the jury to infer that one side of the case is trying to hide or disguise matters that would be useful to the jury.

Bocher v. Glass, 874 So. 2d 701, 704 (Fla. 1st DCA 2004).

Here, as described above, the record shows that Attorney Forte repeatedly violated the court's directions and exposed the jury to inadmissible evidence. The judge's detailed oral findings at trial, which were specifically referenced in the order granting new trial, make clear that he believed that Attorney Forte was taking these actions in an effort to gain an unfair advantage and that the fairness of the trial was in fact jeopardized. The circuit court was in the best position to determine the propriety and potential impact of Attorney Forte's conduct, and we cannot say that the court abused its discretion in determining that a new trial was required under the circumstances of this case.

### III.    Sanctions against Attorney Forte

The court entered a separate order on the motion for sanctions, finding that sanctions were warranted for Forte's repeated "pushing of the envelope" throughout the trial "by putting evidence before the jury which [the] Court ruled to be inadmissible, deliberately misleading the jury, or otherwise displaying non-disclosed materials before the jury." The court set forth a list of eight instances of improper conduct, which included the incidents discussed above. The court specifically concluded that defense counsel's actions were "improper and deliberate," had resulted in a miscarriage of justice, and had solely and directly caused Ward "to incur additional time and expense of relitigating a trial."

Attorney Forte claims that the court's order did not contain sufficiently detailed factual findings and that the court was required to use the magic words "bad faith" to describe the sanctionable conduct. We disagree and reject Forte's invitation to elevate form over substance. The Florida Supreme Court has held that

> a trial court possesses the inherent authority to impose attorneys' fees against an attorney for bad faith conduct. In exercising this inherent authority, an appropriate balance must be struck between condemning as unprofessional or unethical litigation tactics undertaken solely for bad faith purposes, while ensuring that attorneys will not be deterred from pursuing lawful claims, issues, or defenses on behalf of their clients or from their obligation as an advocate to zealously assert the clients' interests. The inherent authority of the trial court, like the power of contempt, carries with it the obligation of restrained use and due process.

Moakley v. Smallwood, 826 So. 2d 221, 226-27 (Fla. 2002). Moreover, the supreme court determined that

> the trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees. Thus, a finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings. In addition, the amount of the award of attorneys' fees must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney. Moreover, such a sanction is appropriate only after notice and an opportunity to be heard—including the opportunity to present witnesses and other evidence.

Id. at 227. Even though the order in this case does not include the specific words "bad faith," it does clearly state that Forte's actions were "improper and deliberate" and resulted in a miscarriage of justice. The order not only lists and details the specific conduct at issue but also references the court's oral findings in which the court

- 10 -

repeatedly determined that Forte was intentionally and purposefully violating the court's rulings. The written recitation of Forte's improper behavior, combined with the numerous oral findings in the record, provide more than adequate support for the court's decision to grant sanctions.

Attorney Forte's reliance on Rush v. Burdge, 141 So. 3d 764, 766-67 (Fla. 2d DCA 2014), is misplaced because in that case the trial court had concluded, even though Mr. Rush's behavior was "intentional and disruptive," it was not "committed maliciously or with malevolent intent." Here, in contrast, the record makes clear that the judge believed that Attorney Forte was intentionally placing inadmissible evidence before the jury in an effort to gain an unfair advantage.

The facts of the instant case are also distinguishable from Tenev v. Thurston, 198 So. 3d 798 (Fla. 2d DCA 2016). In Tenev, this court reversed an order imposing sanctions on Attorney Tenev for bad faith conduct—specifically, before opening statements and before the jury had entered the courtroom, Tenev moved to strike a juror for cause and then provided dishonest answers to the court's questions about the basis for that motion. This court held that "a review of the record before us clearly establishes that Tenev's dishonesty was not a litigation tactic undertaken solely for bad faith purposes." Id. at 801. Indeed, "she clearly was not attempting to unduly delay or protract litigation or to seek an unfair advantage." Id. Ultimately, her actions "did not adversely impact the proceedings in any material way such that a fair trial could not be had for both parties" and did not cause the opposing party to incur additional attorney's fees and costs. Id. at 802. In contrast, Forte's actions did take place in front of the jury: his actions were apparently intended to influence the jury by presenting

- 11 -

inadmissible, unfairly prejudicial evidence.  Because the jury was exposed to that evidence, a new trial was required and Ward will incur additional expenses to relitigate.

Finally, Forte argues that his due process rights have been violated because he did not have adequate notice or an opportunity to be heard on the issue of sanctions.  But the issue of sanctions was repeatedly raised at trial, and the court reserved ruling on the motions.  Then Ward's motion requested a new trial and sanctions on the same grounds that had been addressed at trial.  The issue of sanctions was heard at the same hearing as the motion for new trial; Forte did not request a separate hearing on the matter or seek to present witnesses in mitigation. Accordingly, Forte's due process rights have not been violated.

## IV.      Sanctions against Attorney Tetrick

Attorney Jessica Tetrick argues that the court abused its discretion by imposing sanctions against her because she did not commit the conduct detailed in the sanctions order.  We agree.  Attorney Forte was the partner primarily responsible for the trial; Tetrick was the associate who assisted at trial.  Of the eight grounds for sanctions listed in the court's order, Tetrick was tangentially involved in only one—"[a]sking deliberately misleading questions to Dana Whitaker Childers regarding the 'Jessica' she spoke to one year earlier."  Tetrick did not question Ms. Childers or any other witnesses. Rather, it was Forte who cross-examined Ms. Childers.  It was only in the context of a discussion with the court about whether Ms. Childers had been disclosed as a witness that Tetrick became involved.  During that discussion, she told the court that she assumed she had spoken to Ms. Childers because she was an associate working on the case.  Tetrick later clarified that it was not she who had spoken to Ms. Childers;

- 12 -

rather, records showed it was a summer intern who was also named Jessica. This evidence is insufficient to support a finding of bad faith on Tetrick's part. Accordingly, the sanctions order must be reversed as to Tetrick.

Affirmed in part and reversed in part.

CRENSHAW and BADALAMENTI, JJ., Concur.