NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


FCCI COMMERCIAL INSURANCE )
COMPANY, )
      )
      Appellant, )
      )
v. )      Case No. 2D17-1749
      )
EMPIRE INDEMNITY INSURANCE )
COMPANY, as subrogee and assignee )
of LAKEVIEW AT CARLTON LAKES )
CONDOMINIUM ASSOCIATION, INC.; )
PATNODE ROOFING, INC.; CELERITY )
CONSTRUCTION, INC.; and NTC )
DEVELOPMENT, LTD., )
      )
      Appellees. )
_____)

Opinion filed July 13, 2018.

Appeal from the Circuit Court for Collier
County; Cynthia A. Pivacek and Lauren
L. Brodie, Judges.

Robert M. Darroch and Chad W.
Bickerton of Goodman McGuffey LLP,
Sarasota, for Appellant.

Wayne M. Alder and Andrew M.
Greenidge of Kaufman Dolowich &
Voluck, LLP, Boca Raton, for Appellee
Empire Indemnity Insurance Company.

No appearance for remaining
Appellees.

ROTHSTEIN-YOUAKIM, Judge.

FCCI Commercial Insurance Company (FCCI) appeals the trial court's order awarding attorney's fees to Empire Indemnity Insurance Company (Empire), as subrogee and assignee of Lakeview at Carlton Lakes Condominium Association, Inc., under the trial court's inherent authority to impose sanctions for egregious or bad-faith conduct. FCCI had retained an attorney to defend its insureds, Celerity Construction, Inc. (Celerity), and NTC Development, Ltd. (NTC), in Empire's construction-defect action, but on Empire's motion, the trial court disqualified the attorney for misconduct and determined that Empire was entitled to unspecified attorney's fees and costs "in connection with" the motion (the 2012 order). After FCCI intervened and moved for summary judgment on the fee issue, the court held a hearing and awarded Empire attorney's fees as a sanction against FCCI based on its finding that FCCI "did direct and orchestrate" the attorney's misconduct (the 2016 order).[1] Because the evidence did not support a finding that FCCI had engaged in egregious or bad-faith conduct, we reverse the award of fees and direct the trial court to enter summary judgment in FCCI's favor on Empire's supplemental precautionary motion for attorney fees.[2]

## Background

In the 2012 order, the trial court determined that the attorney had improperly initiated direct contact with a represented party, had improperly obtained

---

[1]Because this appeal does not require us to review the trial court's findings and conclusions with regard to the attorney's misconduct, the attorney's identity is not relevant to this appeal, and we do not refer to him by name.

[2]We therefore do not reach FCCI's arguments concerning the amount of the sanctions award.

privileged documents from that represented party and then forwarded them to other defendants rather than informing the sender, and, in so doing, had violated various Rules of Civil Procedure and Rules Regulating the Florida Bar.  Accordingly, the court disqualified the attorney.  The court also generally granted Empire's request for sanctions by determining that Empire was entitled to attorney's fees.  Celerity and NTC sought certiorari review of the 2012 order, and this court denied their petition per curiam.  See Celerity Constr., Inc. v. Empire Indem. Ins. Co., 125 So. 3d 1026 (Fla. 2d DCA 2013) (table decision).

Thereafter, Empire filed a "supplemental precautionary motion for attorney's fees" based on the 2012 order, in which Empire also sought discovery regarding FCCI's role, if any, in the attorney's misconduct.  Consequently, FCCI sought and was granted leave to intervene in connection with the motion.  FCCI subsequently moved for summary judgment on the motion, arguing, among other things, that it could not be liable for the attorney's misconduct and that it had not engaged in any misconduct itself.  As set forth above, after a hearing, the court denied FCCI's motion for summary judgment and granted Empire's motion for fees.  The trial court subsequently entered a final order awarding Empire attorney's fees against FCCI, and this appeal followed.

## Analysis

As an initial matter, Empire incorrectly contends that we lack jurisdiction to consider this appeal.  See Burt v. SP Healthcare Holdings, LLC, 163 So. 3d 1274, 1275 (Fla. 2d DCA 2015).  Not only is the order awarding Empire attorney's fees an executable judgment against FCCI concluding a portion of the litigation ancillary to

Empire's ongoing litigation against Celerity and NTC (and other codefendants), see Hastings v. Osius, 104 So. 2d 21, 22 (Fla. 1958); Burt, 163 So. 3d at 1275; Saye v. Pieschacon, 750 So. 2d 759, 760-61 (Fla. 1st DCA 2000), but FCCI's limited intervention solely for the purpose of addressing fees demonstrates that the conclusion of the attorney fees proceeding ended judicial labor as to FCCI, see Fla. R. App. P. 9.110(k); Smith v. State, 902 So. 2d 179, 181 (Fla. 3d DCA 2005) (holding that an order awarding sanctions against an attorney was a final, appealable order because the entry of sanctions ended judicial labor in the case with respect to a nonparty); see also Gator Boring & Trenching, Inc. v. Westra Constr. Corp., 210 So. 3d 175, 180 (Fla. 2d DCA 2016) ("Because the trial court's orders completely dispose of all claims involving Travelers, we have jurisdiction to review Gator's appeal from the dismissal of count II as a partial final judgment in accordance with rule 9.110(k).").

Empire also argues that Celerity and NTC's earlier certiorari proceeding bars this appeal under the law-of-the-case doctrine. Again, Empire is incorrect. First, the law-of-the-case doctrine does not apply because our review in the prior certiorari proceeding was limited to the attorney's disqualification; we lacked certiorari jurisdiction to review the sanction portion of the order. See Parrish v. RL Regi Fin., LLC, 194 So. 3d 571, 571 (Fla. 2d DCA 2016) ("Generally, an order imposing monetary sanctions against trial counsel and directing that they be paid on a certain date is a final, appealable order. . . . An order determining an entitlement to attorney's fees and costs without setting the amount is a nonfinal, nonappealable order." (first citing Burt, 163 So. 3d at 1275; then citing Greenberg v. Greenberg, 129 So. 3d 470, 471 (Fla. 2d DCA 2012))); DeMartino v. Simat, 948 So. 2d 841, 843-44 (Fla. 2d DCA 2007) ("[T]he law of

the case doctrine . . . applies only to rulings on questions of law that were actually presented and considered in a prior <u>appeal</u>. Other than the dismissal of a previous attempt to appeal a nonfinal, nonappealable order, there have been no appellate court rulings on questions of law in this case." (first citing <u>Fla. Dep't of Transp. v. Juliano</u>, 801 So. 2d 101, 106 (Fla. 2001); then citing <u>U.S. Concrete Pipe Co. v. Bould</u>, 437 So. 2d 1061, 1063 (Fla. 1983))).

Moreover, the findings in the 2012 order pertained only to the attorney's conduct, and as explained below, findings of misconduct must be tailored to the entity against which sanctions are entered. Although the findings in the 2012 order provided the context for the 2016 order, the 2012 order did not address whether FCCI had engaged in egregious conduct or had acted in bad faith in directing the attorney.[3] <u>See</u> <u>Juliano</u>, 801 So. 2d at 106 ("Under the law of the case doctrine, a trial court is bound to follow prior rulings of the appellate court as long as the facts on which such decision are based continue to be the facts of the case."); <u>Specialty Rests. Corp. v. Elliott</u>, 924 So. 2d 834, 838 (Fla. 2d DCA 2005) ("Because they were not parties to the earlier appeal, this court's earlier ruling did not become law of the case as to them and therefore is not binding upon them.").

---

[3]Indeed, if the trial court in the 2012 order had made findings regarding FCCI and then had sanctioned FCCI under its inherent authority based on those findings, it would have violated FCCI's right to due process because FCCI was not a party either below until 2014, when it intervened, or in the prior certiorari proceeding. <u>See</u> <u>Moakley v. Smallwood</u>, 826 So. 2d 221, 226-27 (Fla. 2002) ("[A] trial court['s] inherent authority to impose attorneys' fees against an attorney for bad faith conduct . . . carries with it the obligation of restrained use and due process. . . . [S]uch a sanction is appropriate only after notice and an opportunity to be heard-including the opportunity to present witnesses and other evidence.").

Turning to the merits, a trial court has the inherent authority to award "attorney's fees where one party has exhibited egregious conduct or acted in bad faith." Bitterman v. Bitterman, 714 So. 2d 356, 365 (Fla. 1998). This authority, however, should rarely be exercised, as it is "reserved for those extreme cases where a party acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons, ' " id. (quoting Foster v. Tourtellotte, 704 F.2d 1109, 1111 (9th Cir. 1983)), whether in connection with the conduct leading to the litigation or during the litigation itself, id. (quoting Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1298 (9th Cir. 1982)). This authority also extends to imposing sanctions against an attorney, Moakley, 826 So. 2d at 224, as does the caveat that it be exercised "sparingly and cautiously," id. at 225 (citing Patsy v. Patsy, 666 So. 2d 1045, 1047 (Fla. 4th DCA 1996)).

Before exercising its inherent authority to impose sanctions, a trial court must provide to the parties "notice and an opportunity to be heard—including the opportunity to present witnesses and other evidence." Id. at 227.[4] The court's imposition of sanctions under that authority "must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees." Id. The court, however, need not employ any "magic words." See Robinson v. Ward, 203 So. 3d 984, 990 (Fla. 2d DCA 2016) (explaining that the court's order need not specifically intone the words "bad faith" as long as it specifically identifies the incidents of bad-faith conduct). We review for an abuse of discretion the

_____

[4]Neither party requested an evidentiary hearing on their motions or challenges the trial court's resolution of the sanctions issue in a summary-judgment fashion.

trial court's award of sanctions.  See Tenev v. Thurston, 198 So. 3d 798, 801 (Fla. 2d DCA 2016).

We have found no case that would preclude a trial court from sanctioning an insurer for egregious or bad-faith conduct that the insurer committed while performing its duty to defend the insured.  Nonetheless, in such circumstances, the trial court cannot ignore that it should rarely invoke this inherent authority, see Bitterman, 714 So. 2d at 365, and should do so only after complying with Moakley.  Thus, although we do not rule out that an insurer could be liable for the egregious or bad-faith conduct of the attorney that it has hired to represent its insured, it would not be sufficient for the trial court to find simply that the insurer had taken an active role in the representation of the insured because no authority provides an exception to the requirement that the trial court make detailed factual findings describing the specific egregious or bad-faith conduct committed by the party against whom sanctions are imposed.  See Moakley, 826 So. 2d at 227; see also Robinson, 203 So. 3d at 991 (affirming sanctions imposed against lead trial counsel because the trial court specifically articulated eight instances of egregious or bad-faith conduct during trial but reversing imposition of sanctions against cocounsel based on the same factual findings because cocounsel was only tangentially involved in one of those instances); State Farm Mut. Auto. Ins. Co. v. Swindoll, 54 So. 3d 548, 551-52 (Fla. 3d DCA 2011) (reversing sanction imposed against State Farm based on conduct of its expert witness on cross-examination because "there is no finding that State Farm's attorneys, much less any State Farm officer or employee, coached [the expert] or elicited the testimony in question" and because there is "no rule of imputation that can justify such an award without some bad

faith or egregious conduct on the part of the party or counsel as well"); Shniderman v. Fitness Innovations & Techs., Inc., 994 So. 2d 508, 515-17 (Fla. 4th DCA 2008) (affirming sanctions against attorney based on specific findings of that attorney's egregious conduct, which was independent of the inherent-authority sanction imposed against the attorney's client for separate egregious conduct that the court had already sanctioned); Allegheny Cas. Co. v. Roche Sur., Inc., 885 So. 2d 1016, 1020 (Fla. 5th DCA 2004) (reversing because the trial court failed to follow Moakley procedures; noting that the court's order awarding fees to Roche "does not specify whether it is against Allegheny and/or Allegheny's attorneys" and that "it is not clear whether the court thought that Allegheny indulged in litigation tactics that warranted sanctions, or that Allegheny was acting in bad faith by refusing to release the money, or both"). Regardless, the trial court in this case did not find that the attorney had engaged in egregious or bad-faith conduct: it found that the attorney's disqualification was warranted, but disqualification does not require a finding of such conduct. Compare Moriber v. Dreiling, 95 So. 3d 449, 454 (Fla. 3d DCA 2012) (explaining that the disqualification of counsel based on the inadvertent disclosure of privileged or confidential information requires a finding of a possibility that the disclosure provided the recipient with an unfair informational advantage, which requires an examination of the actions of counsel upon receipt of information), with Moakley, 826 So. 2d at 224, 227 (explaining that "[t]he inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith" but that it "is rarely applicable" and "is reserved for those extreme cases where a party acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons' " and holding, therefore, that "the

- 8 -

trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees" (quoting Bitterman 714 So. 2d at 365)).

To comply with Moakley, the trial court had to make specific findings of FCCI's egregious or bad-faith conduct. The only finding that the court expressly made in the 2016 order as to FCCI, however, was that FCCI "did direct and orchestrate the actions by [the attorney]." At the hearing, the court also stated that it found "very helpful" Empire's memorandum in response to FCCI's motion for summary judgment, and so we assume that the court relied on Empire's assertions in that memorandum, which included that FCCI had "identified and targeted" the deponent early on in the litigation "as someone they wanted to contact and obtain information from," had directed the attorney to contact the deponent and obtain information from him, had "Supervised, Directed, Authorized, and/or Acquiesced in the actions and conduct of [the attorney] with respect to [ ] the filing of all of the pleadings, Motions and Court papers filed on behalf of NTC and Celerity," and had "Authorized and/or acquiesced, and otherwise directed the actions and conduct which formed the basis for the [2012 order]." Empire also suggested that FCCI had told the attorney not just to set a deposition but also to personally contact the deponent despite FCCI's knowing that he was represented by counsel and that FCCI had subsequently reviewed the privileged information received from the attorney's improper contact with the deponent.

Taking Empire's assertions as true, the trial court might have been able to make the requisite findings of specific acts of egregious or bad-faith conduct on FCCI's part.  The summary judgment evidence, however, did not support the assertions.  First, that evidence establishes that the only direction that FCCI gave the attorney was a general direction to depose the deponent.[5]  But setting a deposition does not, in itself, amount to impermissible contact with a represented individual.  Indeed, the trial court did not disqualify the attorney because he sought to depose the deponent; it did so based on the manner in which he did it and what he did with the documents that he received from it.  There is no evidence demonstrating that FCCI gave the attorney any specifics as to how or when to depose the deponent or whether the attorney should obtain any documents when deposing him.  Moreover, although FCCI's "case handling guidelines for law firms for liability matters" require that FCCI and counsel develop a litigation plan and budget at the outset of the case and confer regarding the investigation of a case, that guide also explicitly provides that "in no event shall the Litigation Plan interfere with the rendering of independent professional judgment of defense counsel."  Further, the preface to the guidelines also provides:

> The Law Firm is expected to work with FCCI and the insured to achieve the best result for the insured in an efficient and cost-conscious manner consistent with the Law Firm's ethical obligations.  Nothing contained herein is intended to nor shall restrict Counsel's exercise of professional judgment in rendering legal services for the Insured or otherwise interfere with any ethical directive governing the conduct of counsel.

---

[5]In its characterization of FCCI's directions to the attorney, Empire suggests that, in addition to conducting the deposition, FCCI wanted the attorney to communicate with the deponent through some means other than deposition.  Contrary to Empire's suggestion, there is no evidence of a direction from FCCI to contact the deponent by other means.

(Footnote omitted.)  Thus, if we assume that the court's invocation of its inherent authority to sanction FCCI is based on the attorney's violations of multiple bar regulations and rules of civil procedure, then there is no evidence to support the trial court's finding that FCCI did "direct and orchestrate the actions of [the attorney]."[6]

For the same reason, Empire's reliance on <u>Burt</u>, 163 So. 3d 1274, for the alternative proposition that sanctions were available under Florida Rules of Civil Procedure 1.280 and 1.380 is unavailing.  The "sole issue" in <u>Burt</u> was the propriety of a monetary sanction imposed directly against a party's law firm based on that firm's asserted failure to comply with discovery orders.  <u>Id.</u> at 1276.  <u>Burt</u>, therefore, is inapposite in the context of a party being sanctioned for the conduct of its counsel.

### Conclusion

Because the evidence did not support a finding that FCCI had engaged in egregious or bad-faith conduct, the trial court erred in sanctioning FCCI under its inherent authority.  Accordingly, we reverse the court's award of fees and remand for the entry of summary judgment in FCCI's favor on Empire's motion.

Reversed; remanded with directions.

MORRIS and BADALAMENTI, JJ., Concur.

---

[6]Although not referenced even indirectly in the trial court's oral ruling or 2016 order, to the extent that the court may have adopted Empire's suggestion that FCCI had reviewed the improperly obtained privileged documents, there is no evidence to support such a finding.