# Third District Court of Appeal

## State of Florida

Opinion filed September 10, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1472
Lower Tribunal No. 21-21127-CA-01
_____

**Miami-Dade County**,
Appellant,

vs.

**Jeishy Mariana Zerpa Malpica, etc.**,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Nicole Ramos-Barreau, Assistant County Attorney, for appellant.

Heise Suarez Melville, P.A., and Thomas S. Ward, Luis E. Suarez, Mark J. Heise and Michael A. Caballero, for appellee.

Before SCALES, C.J., and FERNANDEZ and BOKOR, JJ.

SCALES, C.J.

In this wrongful death action, appellant Miami-Dade County ("the County"), the defendant below, appeals a July 28, 2024 final judgment awarding three million dollars to the plaintiff below, Jeishy Mariana Zerpa Malpica, as the personal representative of the estate of Juan Carlos Martinez Silva. The sole issue on appeal is whether the trial court abused its discretion in denying the County's motion and renewed motions for mistrial directed at the courtroom conduct of Malpica and her family members during the first two days of a six-day jury trial. Finding no abuse of discretion, we affirm the final judgment.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

On February 27, 2021, a police car driven by a Miami-Dade County police officer struck and killed Juan Carlos Martinez Silva (the "decedent"). On September 14, 2021, Jeishy Mariana Zerpa Malpica ("Malpica"), the decedent's wife and personal representative of the decedent's estate, filed the instant wrongful death action against the County. Prior to trial, the County moved, pursuant to Florida Rule of Civil Procedure 1.270(b),[1] for the trial

---

[1] The rule provides:

> (b) **Separate Trials.** The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, crossclaim, counterclaim, or third-party claim or of any separate issue or of any number of claims crossclaims, counterclaims, third-party claims, or issues.

court to conduct a bifurcated trial before the same jury on the issues of liability and damages.[2] The trial court granted the bifurcation motion and the trial commenced on February 5, 2024.

During opening statements at the liability phase of the trial, the trial court noticed that, when her counsel described the accident that had killed her husband, Malpica was crying. The court immediately stopped the proceeding and had the jury escorted from the courtroom. The County raised no objection and, after a ten-minute break, opening statements resumed without further incident.

On the second day of the trial, the courtroom bailiff saw a woman at the back of the courtroom who appeared to be using her cellphone to record the trial. The bailiff instructed the woman to stop using her cellphone and notified the trial judge, who then informed the parties of the cellphone

---

Fla. R. Civ. P. 1.270(b).

[2] A bifurcated trial on liability and damages is a procedural mechanism where the trial is divided into two phases. In the first phase, the jury is asked to determine whether the defendant is liable for the plaintiff's claims. If the jury finds the defendant is not liable for the plaintiff's claims, then the trial ends and judgment is entered in favor of the defendant. If, however, the jury finds the defendant is liable, then the trial proceeds to the second phase, where the same jury determines the amount of damages to be awarded to the plaintiff. "[T]he bifurcation of liability and damages is ordinarily within the sound discretion of the trial court." BDO Seidman, LLP v. Banco Espirito Santo Int'l, 38 So. 3d 874, 875 (Fla. 3d DCA 2010).

incident. The woman's identification was unknown to the parties' attorneys at that time.

Later that day, when the jury exited the courtroom for a lunch break, Malpica's counsel informed the court that the woman in question was Malpica's mother-in-law. According to Malpica's counsel, the mother-in-law had not been recording the trial with her cellphone, but had been using the phone's Google Translate application to provide an English-to-Spanish translation of the proceeding because she did not speak English. The County raised no objection to the cellphone incident. Instead, the County's attorney changed topics and advised the trial court that the attorney had just seen Malpica wearing, underneath a long-sleeve black robe, a shirt depicting a photo of Malpica, the decedent and their infant child. Other than questioning whether the shirt was an appropriate garment for the courtroom, the County's attorney raised no specific objection to the shirt at that time. Nor did the County request a curative instruction or seek a mistrial. Nonetheless, the trial court agreed that Malpica should keep the shirt covered up, and then it adjourned for lunch.

Following the lunch break, but before the trial resumed, the County's attorney advised the trial court that the attorney had just learned of emotional exchanges between Malpica and her family that had occurred earlier that

4

day, in the presence of the jury. When the trial court asked the courtroom bailiff what had happened, the bailiff explained that, while the court was conducting a sidebar conference with the parties' attorneys, Malpica's brother had approached plaintiff's counsel's table in the courtroom, "greeted" Malpica and "embraced" her. Malpica then went to the back of the courtroom and "hugged" her parents, who subsequently left the courtroom. When the court asked whether the bailiff had seen any reaction by the jurors, the bailiff responded, "Not that I know of. I didn't notice any strange reactions or any expresses [sic] on their faces from the jurors."

At this point, the County's attorney moved for a mistrial based on "some cumulative issues with respect to prospective sympathy as it relates to the jurors." The County's attorney referenced (i) Malpica crying during opening statements, (ii) Malpica's mother-in-law using her cellphone in the courtroom gallery, (iii) Malpica wearing a shirt underneath her robe that depicted Malpica, the decedent, and their infant daughter, and (iv) Malpica embracing and hugging her family members in the courtroom. According to the County's attorney, these incidents had a cumulative, prejudicial effect on the jury. The trial court denied the County's motion for mistrial in favor of giving the jury the following curative instruction: "Ladies and gentlemen, I do want to remind you, it is part of the jury instructions, but . . . it does bear repeating. So when

5

reaching your verdict do not let bias, sympathy, prejudice, public opinion . . . or any other sentiment for or against any party to influence your decision."

On February 12, 2024, the jury returned its verdict in favor of the decedent's estate on liability, the first phase of the bifurcated trial. The damages phase of the trial then began with Malpica being the only witness to testify. Both at the close of the estate's case and following the parties' closing arguments on damages, the County renewed its motion for mistrial directed at the cumulative, prejudicial effect of Malpica and her family's courtroom conduct during the first two days of the trial. The trial court denied both renewed motions for mistrial.

On February 13, 2024, the jury returned its verdict on damages, awarding three million dollars to the decedent's estate, a figure that was approximately eleven percent of the amount of damages sought by the estate. After denying the County's motion for new trial, the trial court, on July 28, 2024, entered a final judgment consistent with the jury's verdicts on liability and damages. The County timely appealed the final judgment, arguing that the trial court abused its discretion in denying its motion and renewed motions for mistrial.

**II.     ANALYSIS**

6

This Court reviews for an abuse of discretion a trial court's decision to give a curative instruction rather than grant a motion for mistrial. See Ferere v. Shure, 65 So. 3d 1141, 1146-47 (Fla. 4th DCA 2011). In performing this review, we give deference to the trial court's better vantage point; the trial court has the advantage of seeing the complained-of events, as well as the remainder of the trial. See State Farm Mut. Auto. Ins. Co. v. Rindner, 996 So. 2d 932, 934 (Fla. 4th DCA 2008). "[A] mistrial should not be granted unless an absolute legal necessity to do so exists." Gatten v. Zachar, 932 So. 2d 543, 544 (Fla. 5th DCA 2006) (quoting White v. Consol. Freightways Corp. of Delaware, 766 So. 2d 1228, 1232 (Fla. 1st DCA 2000)). A mistrial is appropriate only where the error is so prejudicial as to vitiate the entire trial. See Tenev v. Thurston, 198 So. 3d 798, 802 (Fla. 2d DCA 2016).

Here, the County moved for a mistrial below based on the cumulative, prejudicial effect of: (i) Malpica crying during opening statements; (ii) Malpica's mother-in-law using her cellphone in some fashion while seated in the courtroom gallery; (iii) Malpica wearing a shirt depicting a picture of Malpica, the decedent, and their daughter underneath a robe; and (iv) Malpica embracing and hugging her family in the courtroom, while the jury was present. But, of these four incidents, the County raised a timely and

7

specific, contemporaneous objection only to Malpica's encounters with her family.

As with any other error that occurs throughout a civil trial, where a person engages in objectionable conduct in the courtroom, the contemporaneous objection rule applies. See Dorsey v. Reddy, 931 So. 2d 259, 265 (Fla. 5th DCA 2006). The contemporaneous objection rule requires that, to preserve the issue for appellate review, a party must object to the improper conduct when it occurs, stating a legal ground for the objection. Id.; see Aills v. Boemi, 29 So. 3d 1105, 1109 (Fla. 2010). If the trial court sustains the objection, the party must either timely move for a mistrial or request a curative instruction. See Companioni v. City of Tampa, 51 So. 3d 452, 456 (Fla. 2010). If the party fails to comply with this process, the improper conduct is reviewed only for whether it constitutes fundamental error. Dorsey, 931 So. 2d at 265.

Here, because the trial transcript plainly reflects that the County made no contemporaneous objection to Malpica's crying, the mother-in-law's cellphone use, and Malpica's clothing, these incidents have not been properly preserved for our review. Nor do these incidents – whether viewed individually or collectively – constitute fundamental error. See Universal Ins. Co. of N.A. v. Warfel, 82 So. 3d 47, 64 (Fla. 2012) ("To justify not imposing

8

the contemporaneous objection rule, 'the error must reach down into the validity of the trial itself[.]'" (quoting <u>Jaimes v. State</u>, 51 So. 3d 445, 448 (Fla. 2010))).

As to the only objected-to incident – Malpica embracing and hugging her family – we discern no reversible error. "Certainly, an emotional outburst has the capacity to . . . subject the jury to undue sympathy. The burden is still upon the appellant to establish that the verdict is wholly unsupported by the evidence or was the result of passion, prejudice, or other improper motive." <u>Rindner</u>, 996 So. 2d at 935. When reviewing claims that a party was prejudiced by an emotional outburst in the courtroom, we generally defer to the trial court's judgment and ruling, especially when, as here, we cannot glean from the record how intense the emotional outburst was, or how the jury reacted to the outburst. <u>See</u> <u>Smith v. State</u>, 320 So. 3d 20, 29 (Fla. 2021).

Here, there is nothing in the record to suggest that Malpica's interactions with her family in the courtroom were so intense as to inflame the passions of the jury. Indeed, the jury's damages award does not suggest the incident prejudiced the jury against the County in any way. The verdict in this wrongful death case does not reflect a grossly inflated award, and was roughly eleven percent of the amount of damages sought by the estate. <u>See</u>

<u>Rindner</u>, 996 So. 2d at 934-35 ("The court should not order a new trial unless it believes that the amount awarded is so great 'as to indicate that the jury must have found it while under the influence of passion, prejudice or gross mistake.'" (quoting <u>Glabman v. De La Cruz</u>, 954 So. 2d 60, 62 (Fla. 3d DCA 2007))).

We, therefore, conclude that, under the circumstances presented in this case, the trial court did not abuse its discretion by giving a curative instruction, rather than granting a mistrial. Accordingly, we affirm the final judgment.

Affirmed.